992 F.2d 1040
 82 Ed. Law Rep. 764, 1 A.D.D. 862
 ASSOCIATION FOR COMMUNITY LIVING IN COLORADO, as
representative of its members; Association for Community
Living in Boulder County, as representative of its members;
Association for Community Living of Arapahoe County, as
representative of its members; Denver Association for
Retarded Citizens, as representative of its members;
Association for Community Living/Weld County, as
representative of its members; Deidre Nann Broszat, a
minor, by and through her parents, Joel and Reinhardt
Broszat; Daman Lascala, a minor, by and through his
parents, Daniel and Carlagene LaScala; Mark Anthony
Mikkelson, a minor, by and through his parents, Michael Mark
Mikkelson and Debra Mikkelson; Casey Alyssa Mangan, a
minor, by and through her parents, Greg and Cathy Ludlow;
and all other persons similarly situated, Plaintiffs-Appellants,
v.
Roy S. ROMER, Governor of the State of Colorado; William T.
Randall, Commissioner of the Colorado Department of
Education; Colorado Department of Education; Fred
Smokoski, in his official capacity, Defendants-Appellees,
Adams County School District No. 1, Arapahoe County School
District No. 6, Arriba-Flagler Consolidated School District
No. 20, Bennett School District No. 29J, Boulder Valley
School District No. RE-2, Centennial School District No.
R-1, Custer County School District No. C-1, Del Norte School
District No. C-7, Douglas County School District RE-1,
Edison School District No. 54-J, El Paso County School
District No. RJ-1, Fremont County School District No. RE-1,
Gilpin County School District No. RE-1, Hi-Plains School
District No. R-23, Jefferson County School District No. R-1,
Mesa County Valley School District No. 51, Miami/Yoder
School District No. 60-JT, Moffat County School District RE
No. 1, Morgan County School District No. RE-3, Park School
District No. R-3, Plateau Valley School District No. 50,
Rocky Ford School District No. R-2, Sierra Grande School
District No. R-30, South Conejos School District No. RE-10,
Weld County School District No. RE-4, Intervenors.
 No. 92-1096.
 United States Court of Appeals,
Tenth Circuit.
 April 27, 1993.
 
 William R. Baesman, of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, CO, for plaintiffs-appellants.
 Antony B. Dyl, First Asst. Atty. Gen. (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Human Resources Section; William E. Thro, Asst. Atty. Gen., Human Resources Section, Education Unit, with him on the brief), Human Resources Section, Education Unit, Denver, CO, for defendants-appellees.
 Alexander Halpern and Susan S. Schermerhorn, Caplan and Earnest, Boulder, CO, for amici curiae school districts.
 Before TACHA, SETH, and BALDOCK, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Appellants (collectively referred to as "Association for Community Living" or "ACL") seek review of a district court order granting Appellees' (collectively referred to as "Colorado Department of Education" or "CDE") motion for summary judgment. ACL brought this class action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485,[1] and 42 U.S.C. § 1983 asserting that CDE's policies and practices denied children with disabilities a free appropriate public education in violation of the IDEA and the Fourteenth Amendment's Equal Protection Clause. In particular, ACL alleged that CDE's policies for extended school year ("ESY") and extended school day ("ESD") services denied children with disabilities individualized education programs tailored to each child's unique needs. We hold that the district court lacked jurisdiction because the plaintiffs failed to exhaust their administrative remedies under the IDEA and therefore reverse and remand to the district court with directions to dismiss the complaint.
 
 I.
 
 2
 The IDEA is a comprehensive statute enacted to ensure that all children with disabilities have access to "a free appropriate public education ... designed to meet their unique needs." 20 U.S.C. § 1400(c); see also Honig v. Doe, 484 U.S. 305, 309, 108 S.Ct. 592, 596, 98 L.Ed.2d 686 (1988). The primary mechanism for implementing this goal is an individualized education program ("IEP"), which the act mandates for each child with a disability, tailored to the child's unique needs. 20 U.S.C. §§ 1401(a)(18), 1414(a)(5); Honig, 484 U.S. at 311, 108 S.Ct. at 598. The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals. 20 U.S.C. § 1401(a)(20).
 
 
 3
 To protect each child's right to a free appropriate public education, states receiving federal funds under the IDEA must establish procedures to ensure that parents have meaningful involvement in decisions concerning their children's educational programming and an opportunity to seek review of decisions they think are inappropriate. Honig, 484 U.S. at 311-12, 108 S.Ct. at 598; Smith v. Robinson, 468 U.S. 992, 1011, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984).[2] Accordingly, parents must receive prior written notice whenever the school district proposes to initiate or change, or refuses to initiate or change, "the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(1)(C). The notice must explain the school district's decision and the procedural safeguards available to the parent who chooses to challenge the decision by filing a complaint. 34 C.F.R. § 300.505.
 
 
 4
 A parent who files a complaint is entitled to "an impartial due process hearing" conducted by either a state, local, or intermediate educational agency. 20 U.S.C. § 1415(b)(2). If the hearing is conducted at the local or intermediate level, the parent may appeal to the state educational agency. Id. § 1415(c). Parents who are dissatisfied with the state's decision may bring a civil action in either state or federal court. Id. § 1415(e)(2). In addition to the IDEA's procedural safeguards, the Education Department General Administrative Regulations ("EDGAR"), 34 C.F.R. §§ 76.1-.910, require states to adopt a formal complaint procedure to ensure state and local compliance with federally funded education programs, including the IDEA. Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir.1992). A complainant who is dissatisfied with the state's response may seek review by the United States Secretary of Education. See 34 C.F.R. § 76.781(c).
 
 
 5
 The named plaintiffs in this suit include organizations that brought this action on behalf of their members and four children with disabilities, by and through their parents, who allege that they were denied a free appropriate public education in violation of the IDEA. In particular, they claim that CDE has denied them appropriately individualized IEPs because its policies arbitrarily predetermine the duration of ESD and ESY services and use a single criterion to determine eligibility for ESY services.
 
 
 6
 The plaintiffs did not pursue the administrative remedies available under the IDEA, but did file a complaint with CDE pursuant to Colorado's EDGAR complaint procedure. Dissatisfied with the resolution of their EDGAR complaints, ACL brought this civil action pursuant to 20 U.S.C. § 1415(e)(2). CDE moved to dismiss for failure to exhaust administrative remedies under the IDEA. The district court denied the motion and granted partial summary judgment for ACL. After ordering revision of CDE's extended school year guidelines, the district court granted CDE's motion for summary judgment and ACL appealed.
 
 II.
 
 7
 Judicial review under 20 U.S.C. § 1415(e)(2) is normally not available until a plaintiff has exhausted the administrative remedies provided under §§ 1415(b)(2) and (c). Honig, 484 U.S. at 326-27, 108 S.Ct. at 606. A plaintiff must exhaust these same remedies before bringing a 42 U.S.C. § 1983 action for relief that is also available under the IDEA. 20 U.S.C. § 1415(f); see also Hayes v. Unified Sch. Dist. No. 377, 877 F.2d 809, 812 (10th Cir.1989). This exhaustion rule serves the following important purposes:
 
 
 8
 "(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error."
 
 
 9
 Hayes, 877 F.2d at 814 (quoting Association for Retarded Citizens, Inc. v. Teague, 830 F.2d 158, 160 (11th Cir.1987) (citations omitted)). Exhaustion is not required, however, where it would be futile or fail to provide adequate relief. Honig, 484 U.S. at 327, 108 S.Ct. at 606; Hayes, 877 F.2d at 814. In addition, the IDEA's legislative history contains a third exception to the exhaustion requirement where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985); see Hoeft, 967 F.2d at 1303-04, Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir.1987).
 
 
 10
 We conclude that this case does not fall within either of the first two exceptions to the exhaustion requirement. Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms. See e.g., J.G. v. Board of Educ., 830 F.2d 444, 446-47 (2d Cir.1987); New Mexico Ass'n for Retarded Citizens v. New Mexico, 678 F.2d 847, 851 (10th Cir.1982). The same is true where plaintiffs assert violations of the IDEA's due process provisions. See e.g., Heldman v. Sobol, 962 F.2d 148, 159 (2d Cir.1992); J.G., 830 F.2d at 447. The violations alleged and relief requested in this case, however, do not target structural or due process concerns, but rather the effect of a single component of CDE's educational program on individual children's IEPs. See Hoeft, 967 F.2d at 1309. This is not the kind of systemic violation that renders the exhaustion requirement inadequate or futile, and framing a complaint as a class action challenge to a general policy does not convert it into one. See id.
 
 
 11
 We further conclude that the plaintiffs fail to meet the requirements of the third exception to the exhaustion requirement. A plaintiff does not necessarily fall within the third exception by challenging a policy of general applicability rather than an IEP formulated pursuant to that policy. Id. at 1304. The plaintiffs must still show that the policy is contrary to law and that the underlying purposes of exhaustion would not be served. Id. at 1304-05. The Ninth Circuit has interpreted the "contrary to law" language to mean that exhaustion may be unnecessary if the alleged violations raise only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important. Id. at 1305; cf. Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1095 (1st Cir.1989) (purposes of exhaustion doctrine not served when issue is "a pure matter of law").
 
 
 12
 ACL's first challenge--regarding Colorado's ESY eligibility criteria--does not raise a purely legal question. Rather, it is a classic example "of the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." Hoeft, 967 F.2d at 1305. The determination of whether CDE's policies have denied children with disabilities appropriately individualized IEPs entails a factually intensive inquiry into the circumstances of each individual child's case. This is precisely the kind of issue the IDEA's administrative process was designed to address. When we have addressed this question in the past, we have had the benefit of an administrative record to guide our inquiry. See Johnson v. Independent Sch. Dist. No. 4, 921 F.2d 1022 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991). Without such records, we cannot determine here whether the thousands of children represented by the plaintiff class have been denied a free appropriate public education.
 
 
 13
 ACL's second allegation--that CDE's policies arbitrarily predetermine the duration of ESD and ESY services--arguably asserts a facial violation of the IDEA's individualization requirement. While this comes closer to presenting a pure question of law, see Hoeft, 967 F.2d at 1306, it still ultimately requires a determination as to whether any individual child was denied a free appropriate public education. Such a determination is enhanced by the factual details of a particular child's case. See Riley v. Ambach, 668 F.2d 635, 642 (2d Cir.1981). Moreover, the purposes of exhaustion would be furthered by allowing the agency to have the first opportunity to consider and correct the alleged violations. Hayes, 877 F.2d at 813. We therefore hold that ACL does not fall within any of the exceptions to the exhaustion rule.
 
 
 14
 We also conclude that the complaint ACL filed pursuant to Colorado's EDGAR procedures is not an adequate alternative to exhausting administrative remedies under the IDEA. See Christopher W., 877 F.2d at 1095. Although the EDGAR complaint did notify CDE of the alleged violations and afford it an opportunity to correct the alleged error, see Hoeft, 967 F.2d at 1308, it did not further any of the other purposes of the exhaustion requirement. The EDGAR procedures are different in both purpose and scope from those in the IDEA and do not provide parents who file complaints with the same opportunities for a full administrative hearing and judicial review. See Richards v. Fairfax County Sch. Bd., 798 F.Supp. 338, 342 (E.D.Va.1992). Unlike EDGAR, the IDEA was carefully tailored to ensure that complainants receive the benefits of a full administrative hearing prior to seeking judicial review and that the reviewing court has the benefit of an administrative record. Id. Allowing plaintiffs to file EDGAR complaints in lieu of exhausting administrative remedies under the IDEA would undermine these important goals.
 
 
 15
 Although we hold that the plaintiffs in this case failed to satisfy the IDEA's exhaustion requirement, we do not hold that every plaintiff in a class action must exhaust the IDEA's administrative remedies. There may be cases where the purposes of the exhaustion doctrine would not be furthered by having even one plaintiff exhaust the IDEA's administrative remedies. Even where exhaustion is necessary, the exhaustion of a few representative claims may be sufficient to secure statutory compliance and, if not, would at least serve the purposes of the exhaustion requirement and properly frame the issues for judicial review. See Hoeft, 967 F.2d at 1308; Teague, 830 F.2d at 161-62.
 
 
 16
 Under the circumstances of this case, we conclude that the purposes underlying exhaustion would be furthered by enforcing the requirement and that none of the exceptions apply. The IDEA's administrative process is adequately designed to address the issues presented in this complaint and lead to the statutory compliance the plaintiffs seek. Accordingly, we REVERSE and REMAND with directions to dismiss the complaint for lack of jurisdiction and DENY the plaintiffs' request for attorneys fees and costs for bringing this appeal.
 
 
 
 [1]
 The IDEA was formerly known as the Education of the Handicapped Act and the Education for All Handicapped Children Act
 
 
 [2]
 Colorado has established procedures pursuant to this requirement. See 1 Colo.Code Regs. § 2220-R-6.03 (1992)