John DOE, a juvenile, BY AND THROUGH his surrogate parent Barbara BROCKHUIS, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

ARIZONA DEPARTMENT OF EDUCATION; Lisa Graham Keegan,* Superintendent of Public Instruction; Clarence Dupnik, Pima County Sheriff, Defendants–Appellees.

No. 96–15188.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1997.

Decided April 15, 1997.

---

* The present legal name of defendant-appellee Lisa Graham Keegan is used pursuant to Fed.

R.App. P. 43(b).

Jerri Katzerman, Arizona Center for Disability Law, Phoenix, AZ, for plaintiff–appellant.

Paula S. Bickett (argued) and Terri M. Skladany, Assistant Attorneys General, Phoenix, AZ, for defendants–appellees.

Before: CANBY and RYMER, Circuit Judges; EZRA, District Judge.**

RYMER, Circuit Judge:

John Doe, on behalf of a class of disabled juveniles housed at the Pima County Jail in Arizona, appeals from the district court's dismissal for failure to exhaust administrative remedies of his claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1485, the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983. We agree with the district court that pursuing normal IDEA procedures would not have been futile in that there was nothing wrong with the hearing process, and the Department of Education did not deny responsibility for providing for the special education needs of juveniles detained at adult jail facilities. The Department simply didn't know that these juveniles were there, and that does not amount to a systemic failure which exhaustion would not cure or for which structural remedies are required. As we have jurisdiction under 28 U.S.C. § 1291,[1] we affirm.

---

** The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

1. *See Ramirez v. Fox Tel. Station, Inc.*, 998 F.2d 743, 747 (9th Cir.1993) (holding dismissal for failure to exhaust remedies is final order under § 1291). The Department began providing edu-

## I

Doe sued on behalf of all persons under the age of 22 with a disability as defined under the IDEA who are housed at the Pima County Jail awaiting trial on criminal charges as adults and who may require special education and related services to obtain a free appropriate public education. At the time the class was certified, there were approximately 22 such persons at the Jail.

It is undisputed that before Doe brought this action in December 1994, the Arizona Department of Education did not monitor or provide education services to disabled youth at the Jail, because the Department was unaware that juveniles were held there. The complaint alleges that by neglecting to assure a free appropriate public education to the class, the Department and the Pima County Sheriff violated the IDEA and discriminated against the class in violation of the Rehabilitation Act and the equal protection and procedural and substantive due process guarantees of the Fourteenth Amendment. Doe sought declaratory and injunctive relief, plus attorneys' fees. The class did not invoke administrative remedies under the IDEA before bringing suit. However, the Department stepped up to the plate after the action was filed, and began to address Doe's special education needs.

The Department moved to dismiss for failure to exhaust administrative remedies. On January 17, 1996, the district court granted the motion, dismissing all counts. The court rejected Doe's arguments that exhaustion was not required under the IDEA because the administrative process would be futile or inadequate, or because the Department had adopted a general policy or practice contrary to federal law. The court likewise dismissed the non-IDEA claims for failure to exhaust, reasoning that the class's Rehabilitation Act and § 1983 claims alleged the same harm and sought the same relief as the IDEA claim and were therefore also subject to exhaustion under 20 U.S.C. § 1415(f).

Doe timely appealed.

cational services to Doe after the action was filed. However, the appeal is not moot, as the class has colorable claims and Doe can fairly

## II

The heart of Doe's case is that the Department of Education gave no attention to children with disabilities detained at the Pima County Jail. For this reason, he says, the class went unserved for several months, receiving neither notice nor hearing before being deprived of educational services. Because a system for serving children with disabilities didn't exist at the Jail, Doe contends that the Department's non-compliance was systemic in nature, rendering the pursuit of administrative remedies unnecessary. Beyond this, Doe maintains that the class seeks a comprehensive remedy that the administrative process is not equipped to provide. Further, Doe submits, children with disabilities need not pursue the administrative process when the adequacy of that procedure is the subject of concern. And finally, Doe sees no benefit to be gained from administrative review.

For its part, the Department acknowledges that there was a period of time that Doe was not served, because it did not know that juveniles were housed in adult jails. Yet it points out that once it became aware that juveniles with special education needs were housed at the Jail, it tried to ensure that identification processes, evaluation, notification, and required special education services were provided in accordance with the IDEA. Thus, the Department suggests, its original failure to address Doe's needs was not inherent in its program but was rather due to an oversight that was remedied after notice; exhaustion would not, therefore, have been futile or inadequate.

The IDEA requires state education agencies that receive federal funds to monitor the provision of education in the state and to ensure an adequate education for all children, including those with disabilities. The Arizona Department of Education is responsible for implementing the IDEA in Arizona.

Judicial review under the IDEA is ordinarily available only after the plaintiff

represent it. *Sosna v. Iowa,* 419 U.S. 393, 401–02, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975).

exhausts administrative remedies. 20 U.S.C. § 1415(e)(2). As we have explained:

States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose.

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992) (quoting *Crocker v. Tennessee Secondary Sch. Ath. Ass'n*, 873 F.2d 933, 935 (6th Cir.1989) (bracket in *Hoeft* )). However, exhaustion is not required if it would be futile or offer inadequate relief, *Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988), or if the agency "has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Hoeft*, 967 F.2d at 1303–04 (quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). The party alleging futility or inadequacy of IDEA procedures bears the burden of proof. *Id.* at 1303.

█ Whether exhaustion is required under the IDEA in a particular case is a question of law that we review de novo. *Id.*

### A

Doe argues that the complaint alleges a "systemic" or "structural" violation that agency procedures would be inadequate to correct. He asserts that, contrary to the district court's view that the class complaint targets only one jail, the complaint is aimed at the Department's abdication of its responsibility to ensure that all children with disabilities have access to a free appropriate public education. The Department, on the other hand, relies on *Hoeft* and the Second Circuit's opinion in *J.G. v. Board of Education*, 830 F.2d 444 (2d Cir.1987), to distinguish its failure to serve the discrete group of juveniles held at the Pima County Jail from a system-wide failure to comply with the IDEA in all jails or prisons in Arizona.

While several courts have recognized that IDEA claims raising "systemic" or "structural" allegations may not need to be adminis-

tratively exhausted, *Beth V. v. Carroll*, 87 F.3d 80, 88 (3d Cir.1996); *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992); *see Urban v. Jefferson County School District R–1*, 89 F.3d 720, 725 (10th Cir.1996) (dictum); *Association for Community Living v. Romer*, 992 F.2d 1040, 1043–45 (10th Cir.1993) (*ACL* ) (dictum); *cf. Hoeft*, 967 F.2d at 1308–09 (contrasting substantive and structural remedies), what constitutes a systemic failure is not so easily defined. Doe relies primarily on *Heldman*, *J.G.*, and *New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F.2d 847 (10th Cir.1982), to support his position that the administrative process, focused on individualized outcomes, is a poor vehicle for effecting substantive change.

We start with our own decision in *Hoeft*. There, the plaintiffs challenged the eligibility criteria and methodology used by the Tucson Unified School District to determine which disabled students would receive extended-year programming. We noted that the claims involved only one component of the school district's special education program, and thus neither rose to systemic proportions nor required structural relief. *Hoeft*, 967 F.2d at 1308.

In *Urban*, the Tenth Circuit held that a disabled child was required to exhaust administrative remedies for his challenge to the Individualized Educational Program (IEP) developed under the IDEA by his school district because his claims, directed at a single IEP, were not systemic. 89 F.3d at 725.

In *Beth V.*, the plaintiffs alleged that the Pennsylvania Department of Education failed to maintain an adequate system for resolving complaints under the IDEA, as mandated by federal regulations. *See* 34 C.F.R. § 300.661. The plaintiffs did not seek an administrative hearing. The district court dismissed the complaint on the ground that the federal regulations did not confer a private right of action, but the Third Circuit reversed, holding that the IDEA itself granted an express right to sue. *Beth V.*, 87 F.3d at 88. Noting the failure to exhaust, the court directed the district court to determine on remand, among other things, whether exhaustion should be waived because the complaint alleged systemic deficiencies. *Id.* at 89 (citing

*Mrs. W. v. Tirozzi,* 832 F.2d 748, 756–57 (2d Cir.1987)).

In *ACL,* the plaintiffs alleged that the Colorado Department of Education's policies regarding extended school days and extended school years discriminated against disabled students in violation of the IDEA and the Equal Protection Clause. Relying in part on *Hoeft,* the Tenth Circuit held that their failure to exhaust was not excused because the violations alleged and the relief requested targeted not structural or due process concerns, but the effect of a single component of the state's educational program on individual children. *ACL,* 992 F.2d at 1043–45.

*J.G. v. Board of Education* had to do with whether attorneys' fees should have been awarded to a class that sought to compel compliance with the IDEA's IEP requirements. The class had argued that its claims were systemic, in that the wrongdoing complained of was inherent in Rochester's program for educating handicapped children and was not directed against any specific child. The city's alleged defaults included such things as failing to evaluate students suspected of having a disabling condition, failing to notify parents of testing, failing to keep students in their current educational placement pending review, and failing to place students in special education programs within a reasonable time after review. *J.G.,* 830 F.2d at 446–47. The Second Circuit agreed that "where, as here, plaintiffs assert the deprivation of their due process rights to proper notice and hearing, they cannot be faulted for the lack of an administrative hearing and appeal." *Id.* at 447. The court explained that exhaustion is not required "where the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.*

In *New Mexico Ass'n for Retarded Citizens,* the class sought relief on behalf of elementary and secondary school-age handicapped children allegedly denied special education services. The district court found that various services offered by the state were deficient and that special education programs in general were inadequately funded. 678 F.2d at 850. Affirming, the Tenth Circuit rejected the state's exhaustion argument. It observed that the gravamen of the suit was that the state's entire special education system was infirm, and that the remedies available at the administrative level (primarily reassignment of students within existing programs) did not include restructuring the system to comply with the IDEA. *Id.* at 851.

*Heldman v. Sobol* is perhaps the best example of a "systemic" claim. There, the Second Circuit excused exhaustion of an IDEA challenge to New York State's method of appointing IDEA hearing officers, a method the court said "neither the Commissioner [of Education] nor the assigned hearing officer has the authority to alter." 962 F.2d at 159. Similarly, in *Mrs. W.,* the Second Circuit did not require exhaustion of a § 1983 action alleging violations of the Education for the Handicapped Act (EHA), the IDEA's predecessor, because the complaint challenged the hearing process itself and alleged "a pattern and practice of systemic EHA violations unable to be addressed at the due process hearings provided in Connecticut." 832 F.2d at 757.

From these cases, it appears that a claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.

■ Doe's claim is in the latter category. The IDEA violation at the Pima County Jail does "not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis." *Hoeft,* 967 F.2d at 1305. Doe's claim involves the neglect of children at a single facility, which normally houses adults but which turns out also temporarily to be housing juveniles awaiting trial as adults, and which the Department didn't know about. Once alerted to its oversight by the lawsuit (and there is no indication that it could not have been told just as effectively by letter, or resort to the administrative process), the Department took steps to begin to remedy it. Thus, unlike the parties in *Heldman,* Doe and the Depart-

ment aren't at odds over issues of law or policy: the Department isn't arguing that it was right to let the Jail slip through the cracks. Further, as we shall explain, there are no obvious practical or legal defects in the IDEA hearing process in Arizona. Conversely, although Doe argues that exhaustion would serve little or no purpose because the central issues are legal and there are no questions of fact to be decided, a district court might have to resolve a number of factual issues within the Department's expertise to determine whether the education at the Jail meets the individual needs of each disabled youth incarcerated there, as the IDEA requires. *See ACL,* 992 F.2d at 1045.

Labeling the Department's failure here to meet its responsibilities to all children with special education needs "systemic" and therefore not subject to exhaustion, as Doe does, would make the requirement to exhaust essentially meaningless. By definition, whenever any child who should be served is not served, the needs of "all" children with special education needs are not being met. But Doe's claim does not challenge a Departmental policy that cannot be changed, so far as he and other class members are concerned, absent structural relief that only a court can order; nor does he complain of a procedural violation so serious that it effectively deprives him of an administrative forum. *See Hoeft,* 967 F.2d at 1305. Therefore, the problem for which Doe seeks relief is not "systemic," and he is not relieved of resorting to state factfinding procedures on this account. *See id.* at 1303.

### B

In the same vein, Doe argues that the problems he complains about cannot be addressed through the administrative process. He contends that IDEA hearing officers cannot confer adequate relief because the Department completely breached its responsibility in developing policies and procedures regarding the location, identification, evaluation and provision of a free appropriate public education to children with disabilities in the Pima County Jail, and there is no local school district to pick up the pieces. Further, Doe maintains that administrative hearing officers lack authority over the matters raised by the class under Arizona law, as they can neither decide whether the Department violated the IDEA nor direct it to comply. We disagree.

Arizona's education statutes cover county jails. Ariz.Rev.Stat. § 15–765 (students in county correctional facilities "are the responsibility" of the facility); *id.* § 15–913.01 (every county jail "shall offer an education program" consistent with the IDEA); *see* Ariz. Admin. Code § R7–2–401 (defining "public agency" under IDEA as a "political subdivision of the state which is responsible for providing education to handicapped children"). Doe suggests that the Pima County Jail is not included in the definition of "public agency" and that no interagency agreement exists to force compliance by the Sheriff. However, under Ariz.Rev.Stat. § 15–765(A), the Jail assumes "responsibility" for the special education of children who previously were receiving special education. In light of these statutes, we cannot say that the class cannot obtain relief without intervention by a federal court. *See Hoeft,* 967 F.2d at 1304–05. That the class might not get class-based or injunctive relief is not decisive. "To hold otherwise would render the IDEA's exhaustion requirement meaningless because it could be bypassed merely by styling the challenge a class action for injunctive relief." *Id.* at 1308–09.

### C

Doe also contends that exhaustion should be excused because his substantive claims concern the adequacy of the administrative process. He points to the class's allegation that the Department failed to inform students or their families of their rights to proper notice and a hearing, and to implement policies and procedures to create an administrative review structure for Jail inmates. Doe relies on *Doe v. Maher,* 793 F.2d 1470 (9th Cir.1986), *aff'd as modified sub nom. Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), which arose under the IDEA's forerunner, the EHA, as amended by the Education for All Handicapped Children Act.

In *Maher,* the guardians of two emotionally handicapped students alleged that school officials unlawfully disciplined the children and reduced their schooling to half days. *Id.* at 1478. On appeal, the school district

argued that one plaintiff had failed to exhaust administrative remedies. We excused that failure on the ground that the district had failed to perform its statutory duty to notify the student's grandparents of a change in class schedule (which school officials had not initially characterized as a change) in a manner that would inform them of available safeguards and avenues of review. In the circumstances, we declined to penalize the "aggrieved party." *Id.* at 1491.

Doe argues that *Maher* is controlling because the Department concedes that it failed to monitor the implementation of the Act, which includes the provision of procedural safeguards, at the Jail, and that it failed to notify the parents or guardians of the class members of their IDEA rights. Although Doe's argument has force, we believe the analogy to *Maher* fails.

Unlike the school officials in *Maher,* the Department did not know about the class. While the Department may have breached its statutory duty to notify Doe's parents or guardians of their IDEA rights, Doe doesn't suggest how it could have notified them in a vacuum; nor does he demonstrate that the Department's default deprived the class of knowledge of their IDEA remedies or interfered with their ability to secure an administrative hearing once their claims came to light, as in *Maher.* In these circumstances, we cannot say that the Department "effectively deprived plaintiffs of an administrative forum." *Hoeft,* 967 F.2d at 1305.

### D

Doe argues that the district court erred in excusing the Department's non-compliance as "inadvertent neglect." We disagree, as this inquiry was relevant to whether the Department was pursuing a "policy ... or practice of general applicability." *Id.* at 1303. Doe argues that the Department lacks procedures to monitor education at jails, and that this shows that it has a policy or practice of not complying with the IDEA. But nothing suggests that the Department's neglect resulted from an agency decision, regulation, or other binding policy. *See id.* at 1305. Since the Department's admitted blunder might be corrected through IDEA hearings, Doe doesn't "demonstrate ... that the underlying purposes of exhaustion would not be fur-

thered by enforcing the requirement." *Id.* at 1304.

### E

Doe argues that the purposes of exhaustion are not served in this case as the matters raised are legal and beyond the authority of administrative officers to resolve. We do not understand this to be so, since the Department acknowledges its legal obligation to attend to the special education needs of children with disabilities housed at the Jail. Furthermore, whether the particular needs of any individual inmate are being met is the kind of fact-intensive inquiry about which we have said

> [e]xhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Hoeft,* 967 F.2d at 1303.

### III

The district court dismissed Doe's constitutional and Rehabilitation Act claims for failure to exhaust, on the ground that these claims alleged the same harm and sought the same relief as the IDEA claim. Doe argues that this was error, but under the statute it wasn't.

The IDEA provides:

> Nothing in this chapter [IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, *except that* before the filing of a civil action under such laws *seeking relief that is also available under this subchapter,* the procedures under ... this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f) (emphasis added).

Doe submits that his non-IDEA claims were wrongly dismissed because they "arise

independently of the IDEA and seek distinct relief not otherwise available." However, the complaint seeks no relief under § 1983 or the Rehabilitation Act that it doesn't also seek under the IDEA. Doe's complaint seeks a single result: adequate education for disabled youth at the Jail. *Cf. Honig,* 484 U.S. at 310, 108 S.Ct. at 597 (stating that the IDEA "confers upon disabled students an enforceable substantive right to public education in participating States"). Because Doe's non-IDEA claims seek "relief that is also available" under the IDEA, 20 U.S.C. § 1415(f), they were rightly dismissed pending administrative exhaustion of the IDEA claim.

AFFIRMED.