NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2241
_____

J.T., on her own behalf, on behalf of her minor child,
A.T. and on behalf of all others similarly situation,

Appellant

v.

*DUMONT PUBLIC SCHOOLS; THE BOARD OF EDUCATION OF THE
DUMONT PUBLIC SCHOOLS; EMANUELE TRIGGIANO; PAUL BARBATO

*(Amended pursuant to the Clerk's Order dated 6/4/2012)
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil No. 2-09-cv-04969
(Honorable Michael A. Hammer)
_____

Argued Pursuant to Third Circuit LAR 34.1(a)
January 7, 2013

Before:  SCIRICA, AMBRO, and FUENTES, *Circuit Judges*.

(Opinion Filed:  April 26, 2013)

Clifford F. Blair, Esq.
Jack E. Pace, III, Esq.
Peter E. Wilhelm, Esq. (ARGUED)
White & Case
1155 Avenue of the Americas
New York, NY  10036

*Counsel for Appellant*

Eric L. Harrison, Esq. (ARGUED)
Methfessel & Werbel
3 Ethel Road
P.O. Box 3012, Suite 300
Edison, NJ 08818

*Counsel for Appellees*

Ruth Lowenkron, Esq.
Education Law Center
60 Park Place
Suite 300
Newark, NJ 07102

*Counsel for Amicus Curiae Council of Parent Attorneys and Advocates, Education Law Center, New Jersey Special Education Practitioners, Statewide Parent Advocacy Network, Special Education Clinic of Rutgers University Newark, and the Arc of New Jersey*

————————————

OPINION OF THE COURT

————————————

SCIRICA, *Circuit Judge*.

In this putative class action asserting claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, plaintiffs appeal from the grant of summary judgment for lack of standing and failure to exhaust administrative remedies. We will affirm.

I.

The Dumont school district, which covers less than two square miles in northern New Jersey, contains four public elementary schools: Grant School, Honiss School, Lincoln School, and Selzer School. Since 2008-2009, the school district has offered one

kindergarten "inclusion class," composed both of students who need special education and those who do not, under New Jersey regulations implementing IDEA. *See* N.J. Admin. Code § 6A:14-4.6(i). In the inclusion class, all students are taught the general education curriculum. *See id.* ("The primary instructional responsibility for the student in an [inclusion class] shall be the general education teacher unless otherwise specified in the student's IEP [i.e., individualized education program]."). The students who need special education participate in an in-class resource program, which consists of individual instruction and support from an in-class special education teacher. *See id.* ("In an in-class resource program, the student shall be provided modifications to the instructional strategies or testing procedures or other specialized instruction to access the general education curriculum in accordance with the student's IEP. . . . An in-class resource program shall be provided in the student's general education class at the same time as the rest of the class.").

In 2008-2009, the inclusion class was held at Lincoln School and contained four of the school district's eight kindergartners with special education needs and twelve kindergartners without such needs. In 2009-2010, the inclusion class was held at Grant School and contained four of the school district's seventeen kindergartners with special education needs and thirteen kindergartners without such needs. In 2010-2011, the class, again held at Grant School, contained one of the school district's eight kindergartners with special education needs and sixteen kindergartners without such needs. New Jersey regulations allow inclusion classes to contain as many as eight students with special education needs. *Id.* § 6A:14-4.6(n). The other kindergartners with special education

3

needs were placed in self-contained classrooms[1] in or out of the school district or in regular classrooms, depending on their individual educational needs.

A.

J.T. is the mother of A.T., an autistic boy. In 2008-2009, A.T. spent part of the school day in a preschool inclusion class at his local neighborhood school, Selzer School, which is located less than a half-mile from his home, and the rest of the school day in an out-of-school district self-contained classroom.

On May 21, 2009, the child study team,[2] J.T., and Dr. Paul Barbato, who is the Dumont school district's Director of Special Services, convened to prepare an IEP for A.T.'s kindergarten year, as stipulated under IDEA. The child study team first considered educating A.T. at Selzer School, with or without supplemental aids and services, but after further evaluation, including discussion with J.T., decided this option would not meet A.T.'s individual educational needs. The child study team then determined that placing A.T. in the kindergarten inclusion class would best meet his needs. As noted, in the 2009-2010 school year, the only kindergarten inclusion class in the two-square-mile school district was located at Grant School. The child study team addressed J.T.'s questions

---

[1] "Unlike inclusion classrooms, self-contained classrooms educate only special needs children." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 491 n.2 (3d Cir. 2012).

[2] Under New Jersey regulation, a child study team, which includes a school psychologist, a learning disabilities teacher-consultant, and a school social worker, along with specialists in the area of disabilities, school personnel, and parents are "responsible for identification, evaluation, determination of eligibility, development and review of the individualized education program, and placement." N.J. Admin. Code § 6A:14-3.1(a). *See S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264-65 (3d Cir. 2003) (explaining that this regulation implements IDEA).

about the inclusion class, explaining that the integrated services, small class size, and in-class special education teacher were important to enable A.T. to retain and generalize information, and further that his placement in the class would be with the expectation that he would transition back to Selzer School for first grade. The child study team also made clear that the general education curriculum taught to all students in the inclusion class would be the same as in a regular kindergarten class.

On June 26, 2009, J.T. filed a due process petition with the New Jersey Department of Education objecting to A.T.'s placement in the inclusion class because it was not a general education class and was not located at A.T.'s nearest school (Selzer School). J.T. also contended the Dumont school district had determined A.T.'s placement based on an alleged general rule that no student with special education needs would be placed at Selzer School. The petition was transferred to the Office of Administrative Law.

During the spring and summer of 2009, J.T. continued to communicate with Dr. Barbato about A.T.'s kindergarten placement. On August 21, 2009, J.T. wrote to Dr. Barbato by email: "I do want to withdraw [A.T.]'s petition. I think [A.T.] belongs in [a] general ed[ucation class], but I am satisfied with revising the modifications and related services and I believe that you feel good about the [inclusion class] program and placement at Grant." In September 2009, J.T. expressed some misgivings about A.T.'s placement in the inclusion class because she wished to have C.T., A.T.'s sibling, placed in the inclusion class but also desired to keep the siblings in separate classes, and again requested A.T.'s placement at Selzer School. Later that month, Dr. Barbato offered to

place A.T. in a regular class at Selzer School multiple times, but J.T. did not accept the offers. A.T. was placed in the kindergarten inclusion class at Grant School, located less than two miles from his home.

B.

On September 28, 2009, J.T. filed a class action complaint under IDEA and § 504 of the Rehabilitation Act. [3] On November 17, 2009, J.T. withdrew her due process petition. On April 16, 2010, J.T. filed an Amended Class Action Complaint, on behalf of all kindergartners (and their parents or caregivers) who reside in the town of Dumont and require special education services, seeking declaratory and injunctive relief, including a proposed declaration that defendants "consider placing each kindergartner who requires special education services in regular classrooms in the school they would otherwise attend if not requiring special education services," and a proposed order that defendants "educate Class members, wherever possible, in regular classrooms," meaning classrooms "that reflect[] the natural proportion" in the district of children requiring special education and those who do not and "are located in the [Class members'] neighborhood school." Meanwhile, A.T. made significant progress in the kindergarten inclusion class at Grant School, where he stayed throughout his kindergarten year, and returned to Selzer School for first grade.

Defendants moved for summary judgment, contending plaintiffs did not have standing because they failed to allege a legally cognizable injury and, alternatively, failed

to exhaust their IDEA administrative remedies. The District Court granted summary judgment on both grounds. It found plaintiffs' allegation of a purely procedural violation failed to provide standing under IDEA or the Rehabilitation Act, and to the extent plaintiffs alleged a substantive violation, they failed to exhaust their IDEA administrative remedies before bringing their claim in federal court. Plaintiffs appeal, contending they allege actionable harm under IDEA and the Rehabilitation Act and requesting excusal from their failure to exhaust IDEA administrative remedies.

II.[4]

The standing requirement of Article III of the United States Constitution is "immutable" and "the irreducible constitutional minimum" for us to have jurisdiction over a case or controversy. *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998) (internal quotation marks omitted). "[I]f none of the named plaintiffs purporting to represent a class establishes" standing, "none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[3] Plaintiffs also claimed a violation of the New Jersey Law Against Discrimination. The District Court dismissed the claim without prejudice for lack of jurisdiction. Plaintiffs brought that claim in state court and do not appeal its dismissal.

[4] The District Court had jurisdiction under 20 U.S.C. § 1415(i)(3) and 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over all jurisdictional questions, including whether a plaintiff has standing, and over a grant of summary judgment. *Biener v. Calio*, 361 F.3d 206, 210 (3d Cir. 2004).

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

(2000). "The actual or threatened injury required by Art. III may exist solely by virtue of

statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*,

422 U.S. 490, 500 (1975) (internal quotation marks omitted); *accord Raines v. Byrd*, 521

U.S. 811, 819 (1997) ("[T]he alleged injury must be legally and judicially cognizable.").

Accordingly, we look to the statutes under which J.T. claims harm to determine if she has

standing to bring this putative class action.

> IDEA provides:
>
> (i) In general
> Subject to clause (ii), a decision made by a hearing officer shall be made on
> substantive grounds based on a determination of whether the child received a free
> appropriate public education.
> (ii) Procedural issues
> In matters alleging a procedural violation, a hearing officer may find that a child
> did not receive a free appropriate public education *only if* the procedural
> inadequacies--
>> (I) impeded the child's right to a free appropriate public education;
>> (II) significantly impeded the parents' opportunity to participate in the
>> decisionmaking process regarding the provision of a free appropriate public
>> education to the parents' child; or
>> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E) (emphasis added). That is, "a school district's failure to

comply with the procedural requirements of the Act will constitute a denial of a [free

appropriate public education] only if such violation causes substantive harm to the child

or his parents." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010)

(internal quotation marks omitted); *accord D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249

(3d Cir. 2012); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 274 (3d Cir. 2012); *D.S. v.*

*Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010) ("A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits.").

Nonetheless, plaintiffs contend purely procedural violations are actionable under IDEA. Plaintiffs are plainly incorrect, as IDEA makes procedural violations actionable "only if" the requirements of subsection (I), (II), or (III) are met. *See D.S.*, 602 F.3d at 565 ("[T]hough it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students' and parents' substantive rights.").

Plaintiffs concede they suffered no substantive harm: "Plaintiffs do not allege that A.T. was injured because he attended the Inclusion Kindergarten, and Plaintiffs do not seek relief in the form of a particular placement for any individual student." Reply Br. at 11 (footnote call number omitted). Plaintiffs concede IDEA permits schools to provide special education services in a centralized location. *Id.* at 18. Before the District Court, plaintiffs similarly conceded they suffered no substantive harm. In their opposition to summary judgment, they stated "the substantive adequacy of Dumont's kindergarten placement decisions – whether Dumont in fact provided a [free appropriate public education] . . . or provided it in the least restrictive environment . . . as to any specific kindergarten student (even A.T.), is not relevant to this action." *J.T. v. Dumont Public Sch.*, No. 09-4969, 2012 WL 1044556, at *9 (D.N.J. Mar. 28, 2012) (internal quotation marks omitted). At oral argument before the District Court, plaintiffs stated their "claims

9

are not based on any . . . allegations of individual harms," they were "not alleging A.T. has suffered an individual denial of an educational benefit," and "for the purposes of standing, their only personal grievance is a process grievance." *Id.* at *3 n.6 (internal quotation marks omitted). As purely procedural claims are not actionable under IDEA, the District Court was correct to find plaintiffs lacked standing.

III.

A.

Assuming plaintiffs had standing, summary judgment would be proper because they failed to set forth any facts showing they were harmed – procedurally or substantively – under IDEA. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party [for summary judgment] may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.").

Plaintiffs allege that the school district has failed to individually consider educational placements for kindergartners in need of special education and instead has implemented a "blanket rule" placing them in an inclusion class without consideration of educating them in their "neighborhood" school (that is, the school closest to their home). Plaintiffs rely on *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171 (3d Cir. 1988) for the proposition that it is an IDEA procedural violation for a school district to "determin[e] educational placements according to 'blanket rules.'" In *Polk*, plaintiffs contended defendants failed "to provide direct ('hands on') physical therapy from a licensed physical therapist to *any* of the children" in question whose IEPs called for

10

physical therapy. *Id.* at 175. We found there was evidence "that none of the 65 children in [question] whose IEPs call for physical therapy actually receive direct physical therapy," so there was a genuine issue of material fact whether defendants had refused, as a blanket rule, to provide individualized educational programs to those children. *Id.* at 172, 176.

As the District Court here found, "*Polk* is distinguishable from this case, given that *Polk* plainly involved the deprivation of an educational benefit," namely hands-on physical therapy. *J.T.*, 2012 WL 1044556 at *8. While *Polk* cast the violation alleged as procedural, this violation "result[ed] in a loss of educational opportunity." *D.S.*, 602 F.3d at 565. Accordingly, the District Court here was correct to find *Polk* is consistent with our precedent explicitly stating a procedural violation is actionable only if it results in substantive harm. *See, e.g.*, *id*; *C.H.*, 606 F.3d at 66.

> Plaintiffs also rely on Dr. Barbato's deposition testimony. Dr. Barbato testified:
>
> [T]he IEP team would consider the educational placement for every student on an individual basis. . . . I believe the child study team offered a program, and the program is housed at Grant School. I believe they did consider the home school of Selzer, however, the program that was offered or proposed, rather, was provided at Grant School. So . . . I believe the home school was considered, however, the needs of the student in terms of program and services outweighed . . . attending the home school.

After making clear he wanted only a "yes" or "no" response, plaintiffs' counsel asked Dr. Barbato "once the IEP team determined that student 33 required RP ICR [i.e., placement in the kindergarten inclusion class], did it have the authority to provide it at Selzer in the 2009/2010 year?" Dr. Barbato responded "No." Plaintiffs' counsel then asked the same question for other 2009-2010 kindergartners and received the same response. Plaintiffs misconstrue this testimony as evidence of a blanket rule. But Dr. Barbato's testimony

11

points out that once an IEP team considered a student's individual educational needs and determined those needs would be met best by placing the student in the inclusion class, the only available location in 2009-2010 was the inclusion class at Grant School.

Furthermore, only a few of the kindergartners in Dumont school district who required special education services were placed in the inclusion class each year: in 2008-2009, four of the eight such kindergartners were placed in the class; in 2009-2010, four of the seventeen such kindergartners were placed in the class; and in 2010-2011, only one of the eight such kindergartners was placed in the class.

Plaintiffs do not allege any other violations of IDEA, such as failure to individually consider A.T.'s educational needs when developing his IEP or hindering J.T.'s participation in the IEP process, nor would they have had a basis for such an allegation. As the District Court found:

> In this case, the Plaintiffs allege the existence of a rigid rule, but there is no denial of services, opportunities, participation, or benefits. The IEP team determined that A.T. needed the support of an in-class special education teacher, and Dumont provided one in the inclusion class. No evidence suggests that the placement of A.T., or any other student in the inclusion class, was inappropriate or that the placement decision was made without considering A.T.'s individual needs. In addition, J.T. had discussions with Dumont about A.T.'s IEP prior to the IEP meeting, and during the meeting, J.T. had the opportunity to discuss her concerns.

*J.T.*, 2012 WL 1044556, at *9. "Undisputedly, Dumont has, through the IEP process, individually determined that certain kindergartners need particular special education services, and provided these services in a classroom with other kindergarteners who need no such services." *Id.* We agree.

B.

12

As discussed, plaintiffs concede they suffered no substantive harm. The District Court explained: "Plaintiffs cast the violations as procedural. To the extent Plaintiffs alleged substantive violations, they abandoned that theory, perhaps recognizing that they would be required to exhaust their administrative remedies before seeking relief in this Court" and that they had withdrawn their due process petition. *Id.* at *7 n.8 (citation omitted).

Furthermore, as noted, the record reveals no basis for alleging a substantive violation. After filing her due process petition, J.T. could have sought stay-put relief, an IDEA requirement to keep students at their current educational placements pending the outcome of administrative proceedings. 20 U.S.C. § 1415(j); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) ("The provision represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved."). But she failed to do so. At the time J.T.'s due process petition was pending but before she filed her class action complaint, Dr. Barbato offered to place A.T. in a regular class at Selzer School multiple times. J.T. did not accept those offers. Moreover, A.T.'s placement in the inclusion class achieved its intended goals: A.T. made significant educational progress during kindergarten and returned to Selzer School for first grade.

Finally, as noted, plaintiffs concede IDEA permits schools to provide special education services in a centralized location, as opposed to in each student's neighborhood school. *See White ex rel. White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 381 (5th Cir.

13

2003) ("All of our sister circuits that have addressed the issue agree that, for provision of services to an IDEA student, a school system may designate a school other than a neighborhood school. Restated, no federal appellate court has recognized a right to a neighborhood school assignment under the IDEA.") (citing First, Fourth, Sixth, Eighth, Ninth, and Tenth Circuit decisions in accord).[5]

Accordingly, the District Court here properly granted summary judgment on plaintiffs' IDEA claim.

## IV.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "[M]ore than one court in this Circuit has held that, when . . .

---

[5] While a school district must take into account geographical proximity of placement, it is not obligated to place students in their neighborhood schools. *Oberti by Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1224 n.31 (3d Cir. 1993) (citing *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 153 (4th Cir. 1991)). IDEA's key requirement is providing students with special needs a "'free appropriate public education . . . specially designed to meet the unique needs of the handicapped child.'" *Id.* at 1213 (quoting *Rowley*, 458 U.S. at 188-89). Accordingly, a "child is [to be] educated in the school he would attend if not disabled *unless the IEP requires some other arrangement.*" *White*, 343 F.3d at 380; *accord Murray By & Through Murray v. Montrose Cnty. Sch. Dist. RE-1J*, 51 F.3d 921, 929 (10th Cir. 1995) ("[A] disabled child should be educated in the school he or she would attend if not disabled (i.e., the neighborhood school), *unless* the child's IEP requires placement elsewhere."). Similarly, New Jersey regulation specifies: "When determining the restrictiveness of a particular program option, such determinations are based *solely* on the amount of time a student with disabilities is educated outside the general education setting." N.J. Admin. Code § 6A:14-4.2(a)(11) (emphasis added).

[Rehabilitation Act] claims are based on violations of the IDEA, the . . . [Rehabilitation Act] claims are derivative of the IDEA claims." *N.P. v. E. Orange Bd. of Educ.*, No. 06-5130, 2011 WL 463037, at *10 (D.N.J. Feb. 3, 2011); *accord W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995) (overruled on other grounds by *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 799 (3d Cir. 2007)) ("There appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition."). Plaintiffs do not dispute they would not have standing under the Rehabilitation Act if they contended they suffered the same harm as they contend they suffered under IDEA. But plaintiffs maintain they suffered an additional injury under the Rehabilitation Act: they were "bus[ed] . . . out of their neighborhood" for the kindergarten year to attend an inclusion class "in the basement, while all the regular kindergarten classes are located in the upper levels of the school," so they were "involuntarily mark[ed] . . . as disabled in the eyes of their peers." Plaintiffs waived this contention by not raising it before the District Court. *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 773-74 (10th Cir. 2010) ("Plaintiffs never argued (until their brief in this appeal) that the . . . Rehabilitation Act claims had any other basis. . . . Having only pursued a theory for recovery under the . . . Rehabilitation Act based on [one issue], Plaintiffs may not now seek to broaden their theory."). Accordingly, the District Court properly granted summary judgment on plaintiffs' Rehabilitation Act claim.

Even if not waived, we would affirm. Plaintiffs rely on *Doe v. National Board of Medical Examiners* for the proposition that being identified as disabled against one's will is an injury. 199 F.3d 146, 153 (3d Cir. 1999). In *Doe*, the plaintiff had standing under

15

the Americans with Disabilities Act because he was identified as disabled on his test scores after "he ha[d] actively sought to avoid being so identified." *Id.* In contrast, IDEA requires school districts to identify students in need in order to provide them special education services. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). Busing students to a centralized location for special services may be integral to IDEA compliance and, depending on the IEP, is sought by many parents of children with special needs.

Furthermore, there is no evidence that plaintiffs were educated apart from other children within Grant School. Within the inclusion class, the large majority of students each year did not need special education, so placement in the class would not have marked a student as with "special needs." In 2008-2009, the inclusion class contained four kindergartners with special needs and twelve without; in 2009-2010, it contained four kindergartners with special needs and thirteen without; in 2010-2011, it contained only one kindergartner with special needs and sixteen without. Nor is the inclusion class segregated from other classes. An educational consultant found "the kindergarten is located on a floor with other typical classes and is not isolated in any manner. . . . The [inclusion class] is a typical kindergarten and has the same physical and social access to the school as any kindergarten class would." A paraprofessional who worked in the inclusion class testified the other classes on the same floor as the inclusion class were an art class, a music class, a speech class, an enrichment class, and a self-contained class.

V.

IDEA "establishes an elaborate procedural mechanism to protect the rights of"

16

special needs children, including "the right to a due process hearing before an administrative official." *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). "Parties aggrieved by the findings and decision made in the administrative proceedings provided by the Act have the right to bring a civil action in either federal or state court." *Id.* (citing what is now 20 U.S.C. § 1415(i)(2)(A)). IDEA "thus grants subject matter jurisdiction to the district courts. However, it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court." *Id.* Exhaustion of the IDEA administrative process is also required, "to the same extent as would be required had the action been brought under" IDEA, before filing a civil action under Title V of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, "seeking relief that is also available under" IDEA. 20 U.S.C. § 1415(*l*).[6]

Plaintiffs concede they failed to exhaust their IDEA administrative remedies before bringing their putative class action in federal court. There is a strong policy of requiring exhaustion. *Komninos*, 13 F.3d at 778.

> This exhaustion rule serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

---

[6] In addressing this issue, plaintiffs contend they seek relief under the Rehabilitation Act that is not available under IDEA: the school district's consideration of whether providing special education services in students' local schools would be unduly burdensome. As plaintiffs did not raise this contention before the District Court, it is waived. *D.L.*, 596 F.3d at 773-74.

*Hayes Through Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 814 (10th Cir. 1989) (quoting *Ass'n for Retarded Citizens, Inc. v. Teague*, 830 F.2d 158, 160 (11th Cir. 1987)). We may excuse failure to exhaust only "(1) where exhaustion would be futile or inadequate; (2) where the issue presented is purely a legal question; (3) where the administrative agency cannot grant relief; and (4) when exhaustion would work severe or irreparable harm upon a litigant." *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88-89 (3d Cir. 1995) (citations and internal quotation marks omitted). The party seeking relief from exhaustion bears the burden of proof. *Honig v. Doe*, 484 U.S. 305, 327 (1988).

Plaintiffs contend their failure to exhaust should be excused because "claims in the OAL routinely take many months, or an average of 190 days, to come to resolution," so it is unlikely any administrative relief would aid plaintiffs, whose claims are limited to the kindergarten year. Plaintiffs provided no expert testimony explaining their calculations. New Jersey, in fact, has "relatively tight time frames for administrative decision making." *Grieco v. New Jersey Dep't of Educ.*, No. 06-cv-4077, 2007 WL 1876498, at *7 (D.N.J. June 27, 2007). Even if plaintiffs had an "unsatisfactory experience with the administrative process, . . . it would be mere speculation for us to conclude that the administrative process would fail each of the other individually named plaintiffs." *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 558 (E.D. Pa. 2008). Moreover, as discussed, plaintiffs never sought stay-put relief, which would have kept A.T. at Selzer School pending the completion of the administrative process.

Plaintiffs also contend the OAL cannot provide class-wide discovery and grant the class-wide declaratory and injunctive relief they seek. Exhaustion may be excused when

18

plaintiffs "allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." *Beth V.*, 87 F.3d at 89. "[A] claim is 'systemic' if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act." *Doe By and Through Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997). A claim "is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Id.*

"[F]raming a complaint as a class action challenge to a general policy does not automatically convert the case into the kind of systemic violation that renders the exhaustion requirement inadequate or futile." *Grieco*, 2007 WL 1876498, at *9; *accord Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993); *Mrs. M v. Bridgeport Bd. of Educ.*, 96 F. Supp. 2d 124, 135 (D. Conn. 2000). Accordingly, the procedure through which the school district placed A.T. in the inclusion class is not rendered a systemic issue simply because J.T. raises it in a putative class action.

In *Romer*, the Tenth Circuit addressed a claim similar to that here: that a department of education had denied a class of children "appropriately individualized IEPs because its policies arbitrarily predetermine the duration of [extended school day] and [extended school year] services and use a single criterion to determine eligibility for [extended school year] services." 992 F.2d at 1043. The plaintiffs failed to exhaust their IDEA administrative remedies before bringing their class action. *Id.* The court held the

19

exceptions to the exhaustion requirement were not met because "[t]he violations alleged and relief requested in this case . . . target . . . the effect of a single component of [the department of education]'s educational program on individual children's IEPs." *Id.* at 1044. "The determination of whether [the department of education]'s policies have denied children with disabilities appropriately individualized IEPs entails a factually intensive inquiry into the circumstances of each individual child's case. This is precisely the kind of issue the IDEA's administrative process was designed to address." *Id.*

Similarly, plaintiffs here claim Dumont school district failed to individually consider their educational placements. This claim addresses only one component of the school district's educational program, which, as the District Court found, "is limited to a small subset of [special needs] students in Dumont, at only one grade level – kindergarten." *J.T.*, 2012 WL 1044556 at *10. Resolving this claim entails "a factually intensive inquiry into the circumstances of each individual child's case." *Romer*, 992 F.2d at 1044. Accordingly, there is no reason to excuse plaintiffs' failure to exhaust the IDEA administrative process, which was designed to address "precisely th[is] kind of issue." *Id.*

## VI.[7]

For the foregoing reasons, we will affirm the District Court's grant of summary judgment and discovery order.

---

[7] During discovery, the District Court ordered the parties to split the cost of creating mirror images of the computer hard drives of two school district administrative personnel. We review discovery orders for abuse of discretion. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995). We see no abuse of discretion here.

20