**Timothy O'HAYRE, individually and on behalf of M.O., a minor, and S.O., a minor, Plaintiffs,**

**v.**

**BOARD OF EDUCATION FOR JEFFERSON COUNTY SCHOOL DISTRICT R–1, Tom Dimit, in both his individual and official capacities, Jill Colby, in both her individual and official capacities, Karen Gabe, in both her individual and official capacities, Kirsten Puttkammer, in her individual capacity, Michael Moler, in his individual capacity, and Julie Brooks, in her individual capacity, Defendants.**

No. CIV.A.99–B–2101.

United States District Court,
D. Colorado.

Aug. 18, 2000.

John W. McKendree, Elizabeth Kelly, Law Offices of John W. McKendree, Denver, CO, for Plaintiff.

Steven J. Dawes, Griffiths, Tanoue & Light, P.C., Denver, CO, M. Gwyneth

Whalen, Julie A. Tishkowski, Caplan and Earnest LLC, Boulder, CO, Jeffrey I. Sandman, Stanford Place II, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs Timothy O'Hayre, M.O., and S.O. (collectively "Plaintiffs") bring fourteen claims under 42 U.S.C. § 1983, 20 U.S.C. § 1400, 29 U.S.C. § 794, 29 U.S.C. § 701, and state law torts. The Jefferson County School Board ("School Board"), Tom Dimit, Jill Colby, and Karen Gabe move to dismiss under Fed.R.Civ.P. 12(b)(6). Oral argument would not aid my resolution of these matters. Having the benefit of the briefs to construe properly the claims in question, and for the following reasons, I deny Defendants' motion to dismiss as moot, and grant Defendants' motion to dismiss Plaintiffs' second amended verified complaint in part. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

## I. Background

The following facts are taken from Plaintiffs' complaint. M.O. and S.O. are fifteen year-old fraternal twins. Timothy O'Hayre is their father. Both twins attend Golden High School, part of the Jefferson County School District. Both twins were diagnosed in elementary school with disabilities, including Perceptual-Communicative disability and Attention Deficit Hyperactivity Disorder. Individual Education Plans ("IEPs") were developed for each child pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.

Tom Dimit, Jill Colby, and Karen Gabe are employees of the School District and members of each twin's IEP Team. Mr. O'Hayre is also a member of these Teams. All Defendants work at Golden High School. Mr. Dimit is the Principal, Ms. Colby is the Vice–Principal, and Ms. Gabe is the Director of Intervention Services.

Plaintiffs allege that Defendants have harassed and discriminated against the twins as a result of the twins' disabilities. They allege false and pretextual criminal actions, misuse of IEP meetings, hypervigilant scrutiny by school officials, and unwarranted suspension, detention, segregation, and expulsion. They also allege an incident of assault on S.O. by Mr. Dimit. Plaintiffs have pursued a variety of administrative appeals.

Defendants moved to dismiss. I then granted Plaintiffs' motion to file a second verified amended complaint. Defendants move to dismiss this second complaint.

## II. Motion to Dismiss

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999).

Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed.R.Civ.P. 8(a), which sets forth the requirements for pleading a claim in federal court. Fed.R.Civ.P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precise-

ly each element of the claim. 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

■ Defendants have attached copies of administrative orders to their motion to dismiss. Plaintiffs argue this converts the Rule 12(b)(6) motion into a Rule 56 motion. I disagree. Rule 12(b) provides that if matters "outside the pleading" are presented to and not excluded by the court, it should treat the motion to dismiss as one for summary judgment. Rule 12(b); *see Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir.1989). Failure to convert a motion to dismiss so postured to a motion for summary judgment under Rule 56 is reversible error. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). However, if a plaintiff does not attach a document to the complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). Here, the attached documents are orders from Plaintiffs' administrative appeals. Because the Defendants' attachments refer exclusively to those documents referenced in the Complaint and are central to the Plaintiffs' claims, I address all issues under the 12(b)(6) standard.

## I. 42 U.S.C. § 1983 Claims

Plaintiffs bring five claims under 42 U.S.C. § 1983, three of which relate to these defendants: violation of the Fourteenth Amendment against Mr. Dimit and the School Board; abuse of IEP process under the IDEA against Mr. Dimit, Ms. Gabe, and the School Board; and conspiracy against Mr. Dimit, Ms. Colby, Ms. Gabe, and the School Board. Defendants move to dismiss all three.

### A. Violation of the Fourteenth Amendment

Mr. Dimit and the School Board argue Plaintiffs' first claim for relief, violation of the Fourteenth Amendment, fails to state a claim upon which relief can be granted. I agree.

Section 1983 of the Civil Rights Act provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 provides a remedy for violations of federal constitutional or statutory rights. *Tafoya v. Adams*, 816 F.2d 555, 558 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987).

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1; "[S]ubstantive due process . . . guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Archuleta v. Colorado Dep't of Insts.*, 936 F.2d 483, 490 (10th Cir.1991) (citations omitted).

A state is not required to provide its citizens with "particular protective services" under the Due Process Clause, and "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, if the state restrains an individual's freedom

to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a "special relationship" during such restraint, requiring it to protect that individual from violent acts inflicted by others. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Armijo By and Through Chavez v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1261 (10th Cir. 1998) (citations omitted).

■ The Tenth Circuit has held that a plaintiff must show involuntary restraint by the government official in order to establish a duty to protect under the special relationship theory. *See id.* (citations omitted). It has further held that schools have no duty under the Due Process Clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented. *See Graham v. Independent Sch. Dist. No. I–89*, 22 F.3d 991, 994–95 (10th Cir.1994). Compulsory attendance laws for public schools do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school. *See id.* (citing *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir.1992), *cert. denied*, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993)). Inaction by the state, in the face of a known danger, is not enough to trigger a constitutional duty to protect unless the state has a custodial or other "special relationship" with the victim. *See Graham*, 22 F.3d at 995. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament ... but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200, 109

S.Ct. 998; *Seamons v. Snow*, 84 F.3d 1226, 1235–36 (10th Cir.1996). An affirmative duty to protect arises only when the state "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ...." *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998; *DeAnzona v. City and County of Denver*, 222 F.3d 1229 (10th Cir.2000).

■ State officials may alternatively be liable for the acts of third parties "where those officials 'created the danger' that caused the harm.'" *Seamons*, 84 F.3d at 1236 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995)). In *Uhlrig*, the Tenth Circuit held that "the danger creation theory must ultimately rest on ... state action which 'shocks the conscience.'" 64 F.3d at 572. *See also County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (affirming the shocks the conscience test in rejecting § 1983 claim against police officer); *DeAnzona*, 222 F.3d 1229.

To satisfy the "shock the conscience" standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking," *id.* at 574, and rising above the level of ordinary tort. *Id.* Under *Uhlrig*, Plaintiff must demonstrate that: (1) [Plaintiff] was a member of a limited and specifically definable group; (2) Defendants' conduct put [Plaintiff] ... at substantial risk of serious, immediate and proximate harm; (3) the risk was obvious or known; (4) Defendants acted recklessly in conscious disregard of that risk; and (5) such conduct, when viewed in total, is conscience shocking. *Id.* "[I]n addition ... a plaintiff must also show that the charged state entity and the charged individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way." *Armijo By and Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir.1998 )

(citing *DeShaney*, 489 U.S. at 201, 109 S.Ct. 998).

■ Plaintiffs' Complaint alleges a "special relationship" arose when Principal Dimit "unlawfully restrained S.O.'s freedom, confined S.O. to Dimit's personal custody and detention, without cause or reason." Complaint at ¶ 73. Plaintiffs argue that the special relationship arose not from compulsory education, but from the fact that S.O. was placed in lunchtime detention "against his will and without cause or reason." *See* Plaintiffs' Response at 10. However, lunchtime detention is not a restraint of personal liberty on par with incarceration or institutionalization. Rather, it confines the child to one portion of the school for a short period of time under the control of an administrator, just as compulsory attendance laws confine a child to classrooms under the control of a teacher. Detention did not so restrain S.O.'s liberty that it "rendered him unable to care for himself," while at the same time failing "to provide for his basic human needs." *De-Shaney*, 489 U.S. at 200, 109 S.Ct. 998. I therefore conclude that no special relationship was created.

■ Plaintiffs next allege that a substantive due process violation occurred when "Defendant Dimit physically assaulted S.O., a minor, without provocation causing S.O. to suffer physical and psychological pain and suffering." Complaint at ¶ 74. Plaintiffs argue that this claim must be analyzed under a Fourth Amendment "reasonableness" standard rather than a "shocks the conscience" standard. *See* Plaintiffs' Response at 11 (citing *Graham v. Connor*, 490 U.S. 386, 398, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). However, Plaintiffs have not alleged a Fourth Amendment violation in their complaint. Rather, they allege a Fourteenth Amendment violation, requiring use of that standard. Under the Fourteenth Amendment, this alleged assault fails to rise to the level of behavior that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (100 mile-per-hour police chase resulting in motorcyclist's death although he was only being pursued for speeding did not shock the conscience); *Abeyta By and Through Martinez v. Chama Valley Independent Sch. Dist., No. 19*, 77 F.3d 1253 (10th Cir.1996) (teacher who allegedly called twelve-year-old student a prostitute in front of class over period of several weeks and allowed other students to do the same engaged in abuse of authority and flagrant misconduct, but behavior did not shock the conscience); *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650 (10th Cir. 1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) (nine-year-old held upside down by a teacher and beaten on the legs with a split wooden paddle by the principal resulting in bleeding, a welt, a two-inch cut, and a permanent scar shocked the conscience).

I therefore conclude that Plaintiffs fail to state a claim upon which relief can be granted for violation of substantive due process under the Fourteenth Amendment.

### B. Abuse of IEP Process under IDEA

Mr. Dimit, Ms. Gabe, and the School Board argue Plaintiffs' second claim for relief, abuse of IEP process under the IDEA, fails to state a claim upon which relief can be granted. Again I agree.

■ Section 1983 of the Civil Rights Act does not create any substantive rights but rather "creates only a remedy for violations of rights secured by federal statutory and constitutional law." *Tafoya v. Adams*, 816 F.2d 555, 558 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) ("1983 by itself does not protect anyone against anything."). Here, Plaintiffs have asserted a claim for "abuse of IEP process" under the IDEA, 20 U.S.C. § 1400 *et seq.*, through excessive IEP meetings, misstatement of the purpose of those meetings,

and using the meetings as a tool of harassment.

Although the IDEA does allow for administrative and judicial review of school decisions and civil enforcement actions to enforce its provisions, *see* 20 U.S.C. § 1415, the statute does not address misuse of the IEP process. The IDEA specifies what an IEP Team must accomplish, *see* 20 U.S.C. § 1414(d), but does not limit the IEP in the scope of their discussions or decisions. *See id.* Plaintiffs here do not argue that the IEP Teams did not meet their statutory mandate. I therefore conclude that Plaintiffs have failed to state a cause of action. Given this conclusion, it is unnecessary to address these Defendants' jurisdiction and exhaustion arguments.

### C. Conspiracy

Mr. Dimit, Ms. Colby, Ms. Gabe, and the School Board argue Plaintiffs' seventh claim for relief, conspiracy, fails to state a claim upon which relief can be granted. I agree.

As noted *supra*, a § 1983 claim must be based on some constitutional or statutory violation. To the extent a conspiracy may form the basis for a § 1983 claim, conclusory allegations of conspiracy are not enough. Rather, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir.1998).

Here, Plaintiffs plead a conspiracy "to deprive Plaintiffs of their constitutional rights, and rights guaranteed pursuant to the IDEA and the Rehabilitation Act when they unlawfully conspired to discriminate against Plaintiffs M.O. and S.O. because of their handicaps, and retaliated against Plaintiffs for exercising their rights guaranteed by federal law." Such conclusory allegations are insufficient to state a claim. *See id.* I therefore conclude that Plaintiffs have failed to state a cause of action.

Given my conclusions on Plaintiffs' 42 U.S.C. § 1983 claims, it is unnecessary to consider Defendants' qualified immunity claims.

### II. IDEA Claims

The School Board next argues Plaintiffs' eighth claim for relief, violation of the IDEA, must be dismissed for lack of jurisdiction. The School Board is correct.

Under the IDEA, the federal government infuses states with funds "for the education of children with disabilities, guaranteeing disabled children between the ages of three and twenty-one access to a free, appropriate, public education (FAPE)." *Erickson v. Albuquerque Pub. Schs.*, 199 F.3d 1116, 1118 (10th Cir.1999). To receive federal funding, states must follow the IDEA's regulations, including identifying, locating, and evaluating children residing in the State who are disabled and "who are in need of special education and related services." 20 U.S.C. § 1412(3)(A). The IDEA defines a "free appropriate public education" as "special education and related services" that: "(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. § 1401(8). The IEP required by the IDEA is prepared during a meeting of the IEP Team, including the child's teacher, a special education professional, and the child's parent(s). *See Erickson*, 199 F.3d at 1118. Among other things, the IEP reflects the child's abilities, special education goals, and the particular services the child will receive in furtherance of those goals. *See id.* The IEP must be reviewed at least annually and revised as necessary to ensure an appropriate education. *See* 20 U.S.C. § 1414(d)(4)(A).

The IDEA provides a variety of procedural safeguards to protect parents. *See* 20 U.S.C. § 1415(d). Parents have the opportunity to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *See* 20 U.S.C. § 1415(b)(6). They must receive written notification of procedural safeguards when schools take certain actions. *See* 20 U.S.C. § 1415(d). Additionally, before a child subject to the IDEA may be disciplined, a manifestation determination must be made by the child's IEP Team. *See* 20 U.S.C. § 1415(k)(4). If the IEP Team determines in accordance with the procedure set by statute that the child's actions were a manifestation of his or her disability, discipline cannot proceed. *See* 20 U.S.C. § 1415(k)(4)-(5). A parent may appeal a manifestation finding to a hearing officer in an administrative appeal. *See* 20 U.S.C. § 1415(k)(6)(A)(i).

A parent must first appeal to an independent hearing officer and then to an administrative law judge. The decision of the ALJ may be reviewed by a federal or state district court. *See* 20 U.S.C. § 1415(i)(1)(A); 1 CCR 301-8 § 6.03. During the pendency of any appeal, the child is to remain in "the then-current educational placement . . . ." 20 U.S.C. § 1415(j). For the purposes of this case, this provision applies to appeals either under 20 U.S.C. § 1415(b)(6) or 1415(k)(4).

 Plaintiffs generally must exhaust the administrative remedies before seeking judicial review. *See Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Association for Community Living in Colo. v. Romer,* 992 F.2d 1040, 1043 (10th Cir.1993). The purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors. *See Ass'n for Community Living,* 992 F.2d at 1044. However, exhaustion is not required when administrative remedies would be futile, when they would fail to provide relief, or when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Id.* (quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. at 7 (1985)). Administrative remedies are generally futile or inadequate when plaintiffs allege "structural or systemic failure and seek systemwide reforms." *Id.* An agency has "adopted a policy or pursued a practice of general applicability that is contrary to the law" when a district has adopted a policy which renders "agency expertise and the factual development of an administrative record less important." *Id.*

Plaintiffs' eighth claim for relief is based on allegations that S.O. was wrongfully expelled after allegedly burning another student on the neck with a lighter, was subjected to hypervigilant scrutiny after his return to school, and was assaulted by Mr. Dimit during detention. *See* Complaint at ¶¶ 100–104 (citing Complaint at ¶¶ 42–47, 49–58). The Complaint also references an unrelated suspension of M.O. *See* Complaint at ¶ 101 (citing Complaint at ¶ 42). Plaintiffs allege that they have exhausted their administrative remedies. Complaint at ¶ 102. Defendants have attached copies of the Independent Hearing Officer's opinion, as well as the Administrative Law Judge's Opinion. As Plaintiffs have referred to these documents in their complaint and do not dispute their authenticity, I consider them as part of the motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997).

 Plaintiffs allege that the Defendant's conduct "deprived S.O. from [sic] a free and appropriate education as required by the IDEA." Complaint at ¶ 101. Plaintiffs do not allege that they have exhausted administrative remedies on this issue. Although a parent may complain about "the

provision of a free appropriate public education," 20 U.S.C. § 1415(b)(5), they must first do so administratively. There is no direct statutory cause of action for failure to provide a free and appropriate education. This paragraph therefore fails to allege exhaustion.

Plaintiffs next allege that they have exhausted their administrative remedies as a state level determination "dated September 15, 1999, ... was mailed to Plaintiff the following day. Plaintiff is seeking review of that state level determination." Complaint at ¶ 102. In an opinion dated September 15, 1999, the ALJ considered four issues. Only one of these issues, the ALJ's determination that Mr. Dimit's participation in the manifestation hearing was proper, is referred to in the Complaint. *See* Complaint at ¶ 48. Mr. Dimit's participation in the manifestation hearing is described in that paragraph. Yet, in Plaintiffs' eighth claim, they specifically exclude that paragraph. *See* Complaint at ¶ 101 (citing ¶¶ "42–47, 49–58"). It is impossible to glean from the Complaint what administrative decisions, if any, are being appealed here. Plaintiffs argue in their brief that "Defendants clearly know the issues decided upon by the state decision of which Plaintiff is seeking judicial review ...." Response at 16. However, I conclude that Plaintiffs have failed to provide "a short and plain statement," Fed.R.Civ.P. 8(a), which would "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although Plaintiffs incorporate the allegations in paragraphs 1–99, this is not specific enough to provide clear and fair notice to the School Board, particularly when the offending conduct has been excluded by the following paragraph and the remainder of the ALJ's opinion is not addressed in the Complaint.

Plaintiffs' eighth claim next alleges that Defendants violated the "stayput" provision of the IDEA by suspending S.O.

after the state level determination was issued. As to this allegation, they argue "Plaintiff attempted to exhaust his administrative remedies on this issue, but Defendants argued before the independent hearing officer that it was improper for this issue to be decided at a due process hearing. Plaintiff is therefore pursuing this issue in this litigation and seeks a preliminary injunction reinstating S.O. into Golden High School." Complaint at ¶ 103.

However, because Plaintiffs have failed to state a claim for review of the ALJ's determination, his opinion became final. *See* 20 U.S.C. § 1415(i)(1)(A) & (B). Once a final determination is made, the stay-put provision no longer applies. *See* 20 U.S.C. § 1415(j). Defendants were therefore free to act in accordance with the ALJ's order. Because Plaintiffs have failed to state a claim for judicial review of the ALJ order, they have also failed to state a claim under the stay-put provision. It is therefore unnecessary to consider Defendants' statute of limitations and claim preclusion arguments.

In short, Plaintiffs' allegations do not satisfy any of the three exceptions to the exhaustion requirement. Administrative relief would not have been futile and could have provided relief. Plaintiffs' claims do not allege systemic violations. Rather, their claims are directed at the decisions of the IEP Teams, and the IDEA specifically leaves the initial determinations of such claims to administrative decision-makers. Plaintiffs were therefore required to exhaust administrative claims under the IDEA before bringing this suit: "To hold otherwise would be contrary to the explicit language of the statute and would undermine the purposes of the exhaustion requirement." *Urban by Urban v. Jefferson County Sch. Dist. R–1,* 89 F.3d 720, 724–25 (10th Cir.1996).

### III. Rehabilitation Act Claim

Mr. Dimit, Ms. Colby, and the School Board argue Plaintiffs' ninth claim for relief, violation of the Rehabilitation Act,

must be dismissed for lack of jurisdiction. I disagree.

■ Section 504 of the Rehabilitation Act of 1973 provides that "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794. Actions brought under section 504 do not generally require exhaustion of administrative remedies. *See Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 194 (3d Cir. 2000); *Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281–82 (3d Cir.1996) (when a § 504 claim is asserted against any party other than a federal employer, there is no exhaustion requirement); *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 471 (6th Cir.1993) ("[E]very court of appeals, which has considered the issue whether to apply the exhaustion requirement to non-federal employees under [section 504] has decided not to apply the requirement"); *Hope v. Cortines*, 872 F.Supp. 14 (E.D.N.Y.1995); *Henchey v. Town of North Greenbush*, 831 F.Supp. 960, 968 (N.D.N.Y.1993) ("A majority of courts addressing this issue have declined to require the exhaustion of administrative remedies").

An exception to this rule exists for plaintiffs seeking relief also available under IDEA. *See* 20 U.S.C. § 1415(1). The IDEA provides that, "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of

this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C.A. § 1415(1). This provision has been read to require exhaustion of administrative remedies whenever a claim is brought under the Rehabilitation Act that could have been brought under the IDEA. In this way, Plaintiffs are precluded from circumventing the administrative requirements of the IDEA through the Rehabilitation Act. *See Smith v. Robinson*, 468 U.S. 992, 1017, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (in case based on IDEA's precursor statute, exhaustion required before § 504 claim may be brought). *See generally, Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir.1996) (exhaustion is required under Title VII); *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir.1997) (same); *New Mexico Ass'n for Retarded Citizens v. State of N. M.*, 678 F.2d 847, 850–851 (10th Cir.1982) (applying rule to 504 case but finding failure to exhaust excused). The exhaustion requirement may be excused if the plaintiff is unlikely to receive adequate relief or if the resulting time delays would subject the plaintiff to irreparable harm. *New Mexico Ass'n for Retarded Citizens*, 678 F.2d at 850 (citations omitted).

Defendants argue that Plaintiffs must exhaust administrative remedies because their Rehabilitation Act claim parallels their IDEA claim. Plaintiffs make clear in their Response that their ninth claim is based on discrimination. *See* Plaintiffs' Response at 18. Such a claim is not provided for in the IDEA. Plaintiffs are therefore not required to exhaust administrative remedies before bringing suit.

## IV. Tort Claims

Defendants argue Plaintiffs' thirteenth, fourteenth, fifteenth, and sixteenth claims for state law torts must be dismissed because they are barred by the Colorado Governmental Immunity Act and because they fail to state claims upon which relief can be granted.

## A. Assault and Battery

 Mr. Dimit first argues that Plaintiffs' claim for assault and battery against him must be dismissed because it is barred by the Colorado Governmental Immunity Act. I disagree.

The Colorado Governmental Immunity Act, Colo.Rev.Stat. § 24–10–101, *et seq.* (the "CGIA"), covers "all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort." Colo.Rev.Stat. § 24–10–102. "Public entity" is defined as "the state, county, city and county, municipality, school district . . . and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law." *Id.* at § 103(5). "Public employee" is defined as "an officer, employee, servant, or authorized volunteer of the public entity." *Id.* at § 103(4). Neither Plaintiffs nor Defendants dispute that the School Board qualifies as a public entity under the CGIA or that Mr. Dimit, Ms. Colby, and Ms. Gabe are public employees.

A public employee may only be liable for willful and wanton conduct. The CGIA states that,

> [a] public employee shall be immune from liability in any claim for injury . . . which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment *unless the act or omission causing injury was willful and wanton.*

*Id.* at § 118(2)(a) (emphasis added). The CGIA goes on to provide that in any action alleging that an act of a public employee was willful and wanton, "the specific factual basis of such allegations shall be stated in the complaint." *Id.* at § 110(5)(a). Failure to plead the factual basis shall result in dismissal for failure to state a claim upon which relief can be granted. *Id.* at § 110(5)(b).

The phrase "willful and wanton" is not defined in the CGIA. However, the majority of Colorado courts to address this issue have applied the definition contained in Colorado's exemplary damages statute, Colo.Rev.Stat. § 13–21–102(1)(b): "[w]illful and wanton conduct is 'conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff[s].'" *See, e.g., King v. United States,* 53 F.Supp.2d 1056, 1073 (D.Colo.1999) (citations omitted); *Zerr v. Johnson,* 894 F.Supp. 372, 376 (D.Colo.1995). Wilful and wanton may "at times even imply an element of evil." *Moody v. Ungerer,* 885 P.2d 200, 205 (Colo. 1994) (construing the CGIA and citing *Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038, 1042 (1954), which defined "willful and wanton" as used in the automobile guest statute).

Plaintiffs' claim for assault and battery alleges that at a noon detention, "Dimit became angry when S.O. dropped a plastic object and ordered S.O. out into the hallway. In the hallway, Dimit physically assaulted S.O., without provocation, by slamming him into a locker causing S.O. physical and psychological pain." *See* Complaint at ¶¶ 125, 56. They further allege that "S.O. was very scared of being further assaulted and tried to get away from Dimit. Dimit then grabbed S.O. forcefully by the arm but S.O. managed to pull away. Dimit then angrily threw S.O.'s hat at him hitting a female student sitting in the hallway." *See* Complaint at ¶¶ 125, 57.

I conclude that the Plaintiffs have stated a claim for assault and battery as it applies to Mr. Dimit sufficient to overcome the CGIA. Here, the allegations that Mr. Dimit "slamm[ed]" a child into a locker and "grabbed S.O. forcefully by the arm" indicate actions "which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the conse-

quences, or the rights and safety of others." *See King v. United States,* 53 F.Supp.2d 1056, 1073 (D.Colo.1999); *see also Robinson v. Denver,* 39 F.Supp.2d 1257, 1264 (D.Colo.1999) (The CGIA "requires that a plaintiff set forth in his complaint specific facts which support his claim that public employees acted willfully and wantonly. Conclusory allegations therefore do not satisfy section 24–10–110(5).").

Mr. Dimit next argues that Plaintiffs fail to state a claim upon which relief can be granted. I disagree.

■■■■ The elements of assault are: "(1) The defendant intended to make physical contact with the plaintiff or intended to place the plaintiff in apprehension of physical contact; and (2) The defendant placed the plaintiff in apprehension of immediate physical contact; and (3) That contact was harmful or offensive." CJI (4th) 20:1. The elements of battery are: "(1) The defendant's act resulted in physical contact with the plaintiff; and (2) The defendant intended to make physical contact with the plaintiff or knew that he would probably make physical contact; and (3) The contact was harmful or offensive." CJI (4th) 20:5.

■■■ Defendants argue that Plaintiffs have failed to state essential elements of these torts in their complaint because they do not use the word 'intent' or explain how the contact was harmful or offensive. However, Plaintiffs allegations show an angry adult who "ordered" a child into the hallway, "physically assaulted" the child "without provocation," and "slamm[ed] him into a locker." *See* Complaint at ¶¶ 125, 56. Common sense reading of their Complaint shows that Plaintiffs are alleging an intentional act. Additionally, the allegation of "physical pain," *see id.,* is enough to show harmful or offensive contact. These allegations are sufficient to meet the liberal notice pleading requirements of Fed. R.Civ.P. 8(a).

**B. Abuse of Process**

■■■ Mr. Dimit, Ms. Colby, and Ms. Gabe argue that Plaintiffs' claim for abuse of process against them must be dismissed because it is barred by the Colorado Governmental Immunity Act. I agree.

Plaintiffs allege that these Defendants "suspended S.O. for Defendant Dimit's assault against him" knowing "or in reckless disregard of the truth" that S.O. was not the aggressor. They allege that these Defendants used the suspension process to justify Mr. Dimit's assault, the decision to expel S.O., and the manifestation decision of the IEP Team. *See* Complaint at ¶ 129. Plaintiffs do not address whether these allegations are of willful and wanton conduct. In contrast to the assault and battery allegations, I conclude that these allegations fail to withstand the CGIA. There is no indication that the actions were willful and wanton, or actions that the Defendants "must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others." *See King v. United States,* 53 F.Supp.2d 1056, 1073 (D.Colo. 1999).

Additionally, even if I were to assume that Mr. Dimit's actions were willful and wanton, Plaintiffs' claim for abuse of process fails to state a claim upon which relief can be granted.

■■■ The elements for an abuse of process claim are: (1) an ulterior motive in the use of judicial proceedings; (2) willful actions by a party in the use of the process which are not proper in the regular conduct of a civil action; and (3) damages caused by (1) and (2). *Moothart v. Bell,* 21 F.3d 1499, 1508 (10th Cir.1994) (*citing Swanson v. Bixler,* 750 F.2d 810, 814 (10th Cir.1984)).

■■■ These Defendants argue that because Plaintiffs do not allege any contact with a judicial forum, their claim cannot stand. I agree, as the cause of action by its terms requires judicial proceedings. Suspensions are not such a proceedings.

Under Colorado law, suspensions are implemented by a school's administrators. *See* Colo.Rev.Stat. § 22–33–105(3)(c). The principal or his designee must provide a student with an informal hearing if the suspension is to last for less than ten days. *See id.* Suspensions of more than ten days may be reviewed by the school district. *See id.* There is no provision for judicial review. *See id.* Although an informal hearing is a both a statutory and a due process requirement, the United States Supreme Court has characterized necessary informal hearings as "less than a fair-minded school principal would impose upon himself in order to avoid unfair suspensions." *Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975 ). The Court refused to require "the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident . . . To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, . . . destroy its effectiveness as part of the teaching process." *Id.* at 583, 95 S.Ct. 729. The Court has required an "informal give-and-take," *id.* at 584, 95 S.Ct. 729, and not a judicial proceeding. I therefore conclude that the suspension process alleged in Plaintiffs complaint fails to rise to the level of "judicial process" necessary for an abuse of process claim.

Plaintiffs argue the equity of the situation, as well as Colo.Rev.Stat. § 22–33–106 (setting out criteria for suspension). Neither of these arguments refutes the basic requirement that the cause of action have its roots in a judicial proceeding. Plaintiffs also cite *Aztec Sound Corp. v. Western States Leasing Co.,* 32 Colo.App. 248, 510 P.2d 897 (1973) for the proposition that "[i]t is the misuse of the statutory requirements and process which is the gravamen of the claim . . . ." However, *Aztec* runs counter to Plaintiffs' argument. *Aztec* involved a defendant who obtained a writ of replevin, a product of the judicial process,

and who went to plaintiff's business premises, accompanied by sheriff's officers, ostensibly to remove equipment pursuant to the writ. Defendant then used that writ to blackmail Plaintiff into paying money. *Aztec* underscores the requirement that an abuse of process claim must involve the judicial process.

I therefore conclude that Plaintiffs' abuse of process fails to state a claim upon which relief can be granted.

### C. *Intentional Interference*

 Mr. Dimit and Ms. Colby argue that Plaintiffs' claim for intentional interference against them must be dismissed because it is barred by the Colorado Governmental Immunity Act. I agree.

Plaintiffs allege that these Defendants subjected M.O. and S.O. to discipline without cause, hypervigilant scrutiny, stalking, false allegations, and "prevented them from being able to benefit from attending Golden High School by depriving them of the ability to concentrate." *See* Complaint at ¶ 132. Plaintiffs do not address how these allegations show willful and wanton conduct. I conclude that these allegations fail to withstand the CGIA. There is no allegation that the actions were willful and wanton, or actions that the Defendants "must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others." *See King v. United States,* 53 F.Supp.2d 1056, 1073 (D.Colo. 1999).

 Once again, even if I were to assume that Mr. Dimit and Ms. Colby's actions were willful and wanton, Plaintiffs' claim for intentional interference fails to state a claim upon which relief can be granted. Plaintiffs cite no authority for an "intentional interference" cause of action, and admit that they have been unable to find such authority. Rather, they ask that I extend the tort of intentional interference with contract to the circumstances of this case, creating a new tort based on the

theory of intentional interference with educational opportunity. I decline to do so. As a result, I conclude that Plaintiffs' claim for intentional interference fails to state a claim upon which relief can be granted.

### D. Civil Conspiracy

Mr. Dimit, Ms. Colby, Ms. Gabe, and the School Board argue that Plaintiffs' claim for civil conspiracy against them must be dismissed because it is barred by the Colorado Governmental Immunity Act. I agree.

■ The CGIA bars all tort claims against public entities, except for those listed in § 24–10–106. *See Koch v. Board of County Comm'rs of Costilla County, Colo.,* 774 F.Supp. 1275, 1276 (D.Colo. 1991). Plaintiffs do not argue that the School Board is not a public entity, that their sixteenth claim for civil conspiracy is not a tort claim, or that the claim falls into any enumerated exceptions. Here, all the requirements for immunity for the School Board are met. Plaintiffs argue, but fail to allege, that all the Defendants, including the School Board, acted willfully and wantonly. However, willful and wanton behavior does not exempt a public entity from immunity. *See King v. United States,* 53 F.Supp.2d 1056 (D.Colo.1999). I therefore conclude that the School Board is immune from Plaintiffs' sixteenth claim for civil conspiracy.

■ Plaintiffs' claim for civil conspiracy against the individual Defendants alleges that the Defendants "reached an agreement" to deprive Plaintiffs of their statutory and legal rights, to retaliate against Plaintiffs for seeking administrative remedies, discriminated against Plaintiffs, abused various processes and interfered with the twins' ability to receive an education. *See* Complaint at ¶ 137. Plaintiffs do not demonstrate how these allegations show willful and wanton conduct. Again, I conclude that these allegations are not enough to withstand the CGIA because there is no indication that the actions were willful and wanton, or actions that the Defendants "must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others." *See King v. United States,* 53 F.Supp.2d 1056, 1073 (D.Colo.1999). Given this conclusion, it is unnecessary to address whether Plaintiffs state a claim for conspiracy upon which relief can be granted.

Accordingly, IT IS ORDERED that:

1. Defendants' first motion to dismiss is DENIED AS MOOT.

2. Defendants' motion to dismiss second amended verified complaint is GRANTED IN PART AND DENIED IN PART.

3. Defendants' motion to dismiss Plaintiffs' first claim for relief, violation of the Fourteenth Amendment under 42 U.S.C. § 1983, is GRANTED.

4. Defendants' motion to dismiss Plaintiffs' second claim for relief, abuse of IEP process under 20 U.S.C. § 1400 and 42 U.S.C. § 1983, is GRANTED.

5. Defendants' motion to dismiss Plaintiffs' seventh claim for relief, conspiracy under 42 U.S.C. § 1983, is GRANTED.

6. Defendants' motion to dismiss Plaintiffs' eighth claim for relief, violation of the IDEA under 20 U.S.C. § 1400, is GRANTED.

7. Defendants' motion to dismiss Plaintiffs' ninth claim for relief, violation of the Rehabilitation Act under 29 U.S.C. § 701, is DENIED.

8. Defendants' motion to dismiss Plaintiffs' thirteenth claim for relief, assault and battery, is DENIED.

9. Defendants' motion to dismiss Plaintiffs' fourteenth claim for relief, abuse of process, is GRANTED.

10. Defendants' motion to dismiss Plaintiffs' fifteenth claim for relief, intentional interference, is GRANTED.

11. Defendants' motion to dismiss Plaintiffs' sixteenth claim for relief, civil conspiracy, is GRANTED.