FILED
United States Court of Appeals
Tenth Circuit

May 10, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

M.S., a minor, by and through her
parent J.S.,

        Plaintiff/Counter-
        Defendant/Appellant,

    v.

UTAH SCHOOLS FOR THE DEAF
AND BLIND,

        Defendant/Counter-
        claimant/Appellee.

Nos. 14-4120 & 15-4003

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:13-CV-00420-TS)**

---

Chantel L. Alberhasky, The Alberhasky Law Firm, P.C., Springfield, Missouri
(Erik Strindberg, Strindberg & Scholnick, LLC, Salt Lake City, Utah, with her on
the briefs), for Plaintiff/Counter-Defendant/Appellant.

Bridget K. Romano, Utah Solicitor General (Sean D. Reyes, Utah Attorney
General, with her on the brief), Salt Lake City, Utah, for Defendant/Counter-
claimant/Appellee.

---

Before **GORSUCH**, **MURPHY**, and **MORITZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

# I. INTRODUCTION

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., "is a comprehensive statute enacted to ensure that all children with disabilities have access to a free appropriate public education [("FAPE")] . . . designed to meet their unique needs." *Assoc. for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1042-43 (10th Cir. 1993) (quotation omitted); *see also* 20 U.S.C. § 1401(9) (describing a FAPE). "To protect each child's right to a [FAPE], states . . . must establish procedures to ensure that parents have meaningful involvement in decisions concerning their children's educational programming and an opportunity to seek review of decisions they think are inappropriate." *Assoc. for Cmty. Living*, 992 F.2d at 1043. IDEA grants parents of disabled children the right to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). "A parent who files a complaint is entitled to an impartial due process hearing conducted by either a state, local, or intermediate educational agency. . . . Parents who are dissatisfied with the state's decision may bring a civil action in . . . federal court." *Assoc. for Cmty. Living*, 992 F.2d at 1043 (quotation omitted); *see also* 20 U.S.C. § 1415(f) (describing the due process hearing); *id.* § 1415(i)(2) (providing right to bring a civil action in state or federal court).

J.S. is the mother of M.S., a child covered by IDEA. M.S. is a residential student at the Utah Schools for the Deaf and Blind ("USDB"). Believing USDB was not complying with IDEA's procedural requirements and was not providing M.S. with a FAPE, J.S. sought a due process hearing. *See* 20 U.S.C. § 1415(f). Unsatisfied with the limited relief she obtained in that hearing, J.S. filed a civil action in federal court. *See id.* § 1415(i)(2). J.S. now appeals from the district court decision granting her additional limited relief. She asserts the district court erred when it (1) delegated its authority to resolve the propriety of M.S.'s residential placement to members of the team tasked with developing M.S.'s individualized education program ("IEP")[1] and (2) granted her only a partial award of attorneys' fees.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude the district court delegated the issue of M.S.'s residential placement to her IEP team and that such delegation is at odds with 20 U.S.C. § 1415. Thus, we **remand** this matter to the district court to resolve the issue of M.S.'s residential placement. Our remand makes it unnecessary to resolve the propriety of the district court's award of partial attorneys' fees. Nevertheless, we identify legal flaws in the district court's analysis of a proper fee award that may reoccur on remand.

---

[1]*See* 20 U.S.C. § 1401(14) (defining IEP); *id.* § 1414(d) (describing the requirements of an IEP and the duties of an IEP team).

-3-

## II. BACKGROUND

M.S. is blind and hearing impaired and has been diagnosed with autism and a cognitive impairment. She has been a residential student at USDB since September 2004 and is working on basic life-skills. In early 2010, USDB informed J.S. it was closing its residential program. USDB's decision to eliminate its residential program caused continuing tension between USDB and J.S. After J.S. and other parents sought assistance from an advocacy group, USDB decided to keep its residential program open.

In May 2010, USDB audiologist Robert Shaw attempted to conduct an evaluation of M.S. The evaluation failed because M.S. would not tolerate anything in or near her ears. Several previous audiological tests on M.S. were also unsuccessful. As far back as 2003, a different USDB audiologist indicated an auditory brainstem response ("ABR") test would provide more definitive information about M.S.'s level of hearing sensitivity. After his unsuccessful evaluation of M.S. in May 2010, Shaw also recommended an ABR test.

During an IEP meeting in August 2010, J.S. indicated she was dissatisfied with USDB's evaluation of M.S. and with M.S.'s slow progress toward her goals. J.S. requested an Independent Educational Evaluation ("IEE") by experts in the areas of autism and blindness. *See* 20 U.S.C. § 1415(b), (d)(2)(A). J.S. also requested the performance of a sedated ABR test to determine if M.S. had hearing loss. USDB agreed to both requests. USDB also agreed that M.S.'s residential

placement at USDB would not be changed until the IEE was completed. In February 2011, USDB sent J.S. a list of qualified evaluators for M.S.'s IEE. USDB indicated it would allow a maximum of $2000 for the IEE. *See* 34 C.F.R. § 300.502 (detailing, inter alia, when a state agency must pay for an IEE).

M.S. received a sedated ABR test in September 2010. The test revealed she has "a bilateral, mild to moderate, low frequency hearing loss that slopes to within normal limits at 2000 and 4000 hertz." *M.S. ex rel J.S. v. Utah Sch. for the Deaf & Blind*, 2014 WL 4216027, at \*1 (D. Utah Aug. 25, 2014). In response to these results, M.S.'s long-time classroom teacher, Ms. Hadley, introduced thirty tactile signs and noted M.S. made progress in both receptively understanding the signs and in beginning to use them expressively. M.S.'s IEP was modified to add a classroom frequency modulated system ("FM system") to help compensate for her hearing loss. Ms. Hadley left USDB in May 2011; M.S. began classes in August 2011 with a new teacher, Ms. Hollinger.

On September 13, 2011, an IEP meeting was held. J.S. indicated that, because of the new diagnosis of a hearing impairment, M.S. should have a deafblind IEE instead of an IEE for blindness and autism. USDB noted a deafblind IEE would cost more than the previously allotted $2000 and indicated it would make more money available. The IEP that came out of this meeting was not signed because it was not complete. Various staff members at USDB were confused about whether the 2010-11 IEP would continue to be implemented or

whether the 2011-12 IEP would control. Although Ms. Hollinger testified she implemented both IEPs, she did not utilize tactile signs or the FM system in the classroom during the entire 2011-12 school year.

M.S.'s deafblind IEE was conducted at Perkins School for the Blind ("Perkins") in March 2012. The Perkins IEE recommended, inter alia, (1) the use of an FM system, (2) the use of a total communication approach, (3) additional "speech language services minutes," and (4) consistency for M.S. in all environments. USDB found many recommendations in the Perkins IEE to be appropriate for M.S. and utilized the IEE for M.S.'s statutorily required three-year reevaluation. Nevertheless, USDB refused to reimburse J.S. for transportation costs associated with obtaining the Perkins IEE in Massachusetts.

M.S.'s next IEP meeting was held on October 29, 2012. USDB went over the Perkins IEE report and indicated it was concerned with the report's disregard for M.S.'s autism diagnosis and failure to appreciate M.S.'s usable hearing. For her part, J.S. was concerned the autism diagnosis was questionable because it was rendered prior to the diagnosis of M.S.'s hearing loss. J.S. also believed USDB was discounting M.S.'s hearing loss. On December 17, 2012, the parties held an IEP meeting with a facilitator present. The meeting lasted over four hours, but had to be cut short because J.S. had to go to work. USDB indicated it would need to reconvene the meeting to finalize the IEP because several sections were not completed. On January 8, 2013, J.S. filed for a due process hearing, alleging

USDB had committed procedural and substantive violations of IDEA. *See* 20 U.S.C. § 1415(f). Another IEP meeting was scheduled for February 4, 2013; the December 17, 2012, IEP was finalized at that meeting. The 2012-13 IEP rejected J.S.'s request that M.S. be placed at Perkins and, instead, changed M.S.'s placement to the Provo School District.

The due process hearing was held in early 2013. M.S. raised five procedural issues and seven substantive issues. The hearing officer found that USDB predetermined extended-school-year services for M.S. outside of the context of an IEP meeting during 2011 and 2012 (i.e., denied summer language services without parental input or a decision from M.S.'s IEP team). To remedy this violation, the hearing officer ordered compensatory education in the form of direct speech-language-pathology services. The hearing officer also determined the Provo School District was not an appropriate placement for M.S. The hearing officer ruled in USDB's favor on all other claims raised by J.S.

Consistent with the provisions of § 1415(i)(2), J.S. brought a civil action in federal district court seeking additional relief. J.S. sought a declaration that the decision of the hearing officer was inconsistent with IDEA in that it improperly concluded (1) the 2010-11 and 2011-12 IEPs provided M.S. a FAPE and, therefore, failed to order compensatory education services for those time frames; (2) the 2012-13 IEP was reasonably calculated to provide M.S. a FAPE and, therefore, failed to order USDB to remediate the 2012-13 IEP; (3) the Perkins IEE

costs were unreasonable and, therefore, failed to order USDB to reimburse J.S. for travel expenses related to the IEE; and (4) USDB was an appropriate educational placement for M.S. She also sought a declaration that USDB failed to properly identify M.S. as a deafblind student. USDB filed an answer and counterclaim. *See* 20 U.S.C. § 1415(i)(2) (allowing any "aggrieved party" to file a civil action in district court challenging the decision of a hearing officer). USDB's counterclaim asserted the hearing officer erred in concluding the Provo School District was not an appropriate educational setting for M.S. Neither J.S. nor USDB sought to adduce any additional evidence in the district court. *See id.* § 1415(i)(2)(C)(ii) (providing that in addition to the administrative record, the district court "shall hear additional evidence at the request of a party"). Instead, both parties filed motions for judgment on the administrative record.

Employing the "modified de novo" standard of review applicable to IDEA suits, *Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1149 (10th Cir. 2008), the district court considered each issue raised by J.S. at the due process hearing.[2] Although the district court ruled in favor of USDB on several

---

[2]The district court specifically stated that J.S. appealed from every issue upon which she was denied relief by the hearing officer. J.S. asserts the district court's conclusion is erroneous and that, in fact, she only raised in her federal court action six of the ten issues upon which the hearing officer denied relief. This potential discrepancy is relevant to the attorneys' fees issue discussed below. A review of J.S.'s federal complaint, as well as the portions of J.S.'s Motion for Judgment on the Administrative Record included in the appendix, lend some credence to J.S.'s assertion. Because the appellate record is extremely limited,

(continued...)

issues, it ultimately concluded USDB denied M.S. a FAPE.[3]  As relevant to the

issues on appeal, it concluded USDB's discontinued use of the FM system during

the 2011-12 school year without approval of M.S.'s IEP team or notification to

J.S. amounted to a procedural violation of IDEA that denied M.S. a FAPE.

Independent of the issues relating to the FM system, the district court concluded

that multiple failures on the part of USDB to properly implement the 2011-12 IEP

denied M.S. a FAPE.[4]  In addition, the district court concluded J.S. had carried

her burden of demonstrating the Provo School District was not an appropriate

_____

[2](...continued)
however, it is impossible to definitively resolve this question.  In any event, as explained below, this matter must be remanded to the district court to resolve, in the first instance, the issue of M.S.'s educational placement.  For that reason alone it is necessary to vacate the district court's attorneys' fees award and remand the matter for further consideration.  After all, as the parties both recognize, the resolution of the placement issue bears on the reasonableness of J.S.'s fee request.  After the district court resolves the issue of M.S.'s residential placement and returns to the issue of an appropriate award of attorneys' fees, it should also consider whether its view that J.S. only obtained limited relief was skewed by its potentially erroneous conclusion that she raised in federal court every issue she presented to the hearing officer in the due process hearing.

[3]This is a particularly meaningful conclusion given that J.S. specifically sought to have M.S. privately placed at Perkins and such a private placement is not appropriate unless USDB denied M.S. a FAPE.  *See generally Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985).

[4]The district court also appears to have ruled in J.S.'s favor, at least in part, on an additional issue.  J.S. argued that USDB failed to properly identify M.S. as deafblind and failed to utilize dual sensory loss strategies in M.S.'s IEPs after the 2010-11 school year.  Although the district court concluded USDB's classification of M.S. as "multiple-disabled" was appropriate, it also ruled that "M.S.'s dual sensory loss must be taken into account in her IEPs."

placement for M.S.[5] Finally, the district court concluded USDB committed a substantive violation of IDEA when it refused to reimburse J.S. for the travel costs associated with the Perkins IEE.

Having resolved all other issues, the district court turned to J.S.'s assertion that placement of M.S. at Perkins was necessary because USDB could not provide M.S. a FAPE. The district court, although recognizing that the "issue of placement must be addressed," refused to resolve the question. Instead, it ruled as follows:

> Rather than order a specific placement, the Court will require particular educational compensatory services to be offered to M.S. M.S.'s IEP team can then determine placement at an appropriate residential school that will provide her with the services ordered. This way, M.S.'s IEP team, the people most familiar with M.S. and with USDB's services, can determine if USDB or Perkins is an appropriate placement for M.S.

After the district court issued its order, J.S. filed a motion for attorneys' fees. *See* 20 U.S.C. § 1415(i)(3)(B)(I) (providing that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability"). The district court concluded J.S. was a prevailing party entitled to an award of fees. Nevertheless, concluding J.S. had only obtained

---

[5]Although the hearing officer ruled in J.S.'s favor on this issue and it was brought before the district court in USDB's counterclaim, the burden of proving the Provo School District was not an appropriate placement was on J.S., the party challenging the IEP placement. *Johnson ex rel. Johnson v. Indep. Sch. Dist. No. 4*, 921 F.2d 1022, 1026 (10th Cir. 1990).

limited success in both the due process hearing and federal court, the district court awarded a significantly reduced fee. In particular, the district court awarded J.S. just 30% of the fees incurred in association with the due process hearing and 40% of the fees incurred in association with the federal court proceedings. The district court also denied J.S.'s request for attorneys' fees associated with IEP meetings that took place in February 2013, February 2014, and April 2014, concluding those IEP meetings did not result from J.S.'s request for a due process hearing or from her filing of this suit in federal court. *See id.* § 1415(i)(3)(D)(ii) (precluding an award of attorneys' fees for IEP meetings unless the meeting was "convened as a result of an administrative proceeding or judicial action").

## III. ANALYSIS

J.S. asserts the district court erred in delegating to M.S.'s IEP team the decision whether to place M.S. at Perkins and in awarding her only a limited amount of attorneys' fees.

## A. Delegation of Placement Decision

The record leaves no doubt that the district court delegated the question of whether M.S. should be placed at Perkins to M.S.'s IEP team. The question of whether it was appropriate for the district court to "remand" the propriety of M.S.'s placement was raised for the first time by the district court at the hearing on the parties cross-motions for judgment on the administrative record. Both

parties responded by asserting the decision was one the district court should make as part of an order requiring compensatory services if the district court were to determine USDB denied M.S. a FAPE.  In its written order, the district court specifically noted that the placement issue raised by J.S. was substantive in nature and "must be addressed."  The district court concluded, however, that M.S.'s IEP team was best suited to make the decision.  Finally, in its order granting J.S. a partial award of fees, the district court made clear it "sought the IEP Team's expertise in fashioning an updated IEP, including determination of the appropriate placement for M.S."

With this background, it cannot be credibly argued that the district court did not delegate the issue of M.S.'s placement to her IEP team.  Nevertheless, USDB argues the district court did nothing more than enter an award of compensatory services to address implementation errors that occurred during the 2011-12 school year and left to the IEP the ministerial task of implementing that order.  In support of this interpretation of the district court order, USDB cites to three district court cases in which the courts affirmed orders by hearing officers that allowed IEP teams to implement orders of compensatory services.[6]  *See*

---

[6]None of these cases involve a district court order remanding a claim to an IEP team.  Instead, they each involve a federal court challenge to a purported delegation by a due-process hearing officer to an IEP team.  Like the parties, however, we conclude this procedural difference does not mean the cited cases are irrelevant to the question on appeal.  In an appeal from a decision of a hearing officer following a due process hearing, a district court shall "receive the records

(continued...)

*Struble v. Fallbrook Union High Sch. Dist.*, No. 07-cv-2328, 2011 WL 291217 (S.D. Cal. Jan. 27, 2011); *A.L. ex rel. L.L. v. Chi. Pub. Sch. Dist. No. 299*, No. 10-C-494, 2011 WL 5828209 (N.D. Ill. Nov. 18, 2011); *State v. Zachary B. ex rel. Jennifer B.*, No. 08-00499, 2009 WL 1585816 (D. Hawaii June 5, 2009). USDB's reliance on these cases is misplaced. In none of the cited cases did the hearing officer or district court refuse to address a validly exhausted issue. Instead, in each case the district court or hearing officer resolved a concrete issue and ordered specific relief, but left insignificant implementation details to be incorporated into an IEP. *Struble*, 2011 WL 291217 at *7-8 (upholding an order by a hearing officer for the parties to develop a new IEP which would permit the student to work toward a diploma because the order "did not give the IEP team authority to change or reduce the remedy in any way"); *A.L.*, 2011 WL 5828209 at *9 (upholding an order directing "the IEP team to develop an IEP that includes

---

[6](...continued)
of the administrative proceedings," "hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, . . . grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). This court has made clear that this type of review "differs substantially from judicial review of other agency actions." *Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995) (quotation omitted). Under IDEA's judicial review provisions, the district court "must decide independently whether the requirements of the IDEA are met." *Id.* (quotation omitted). Thus, the district court is, in effect, acting like an ultimate due-process hearing officer. *See id.* at 927 & n.11. *Compare* 20 U.S.C. § 1415(f)(3)(E) (setting out role of impartial due-process hearing officer), *with id.* § 1415(i)(2)(C) (setting out federal court's role). For that reason, cases addressing the propriety or impropriety of a hearing officer delegating an issue for decision to an IEP team are sufficiently analogous to be relevant to the issue before the court in this case.

reading instruction presented through a multisensory approach" (quotation and alteration omitted)); *Zachary B.*, 2009 WL 1585816 at *11 (affirming order of hearing officer which required weekly one-on-one tutoring sessions with a particular educator and directed that the educator craft a tutoring program to the student's particular needs). Here, the district court refused outright to resolve the placement issue, leaving the matter entirely to the discretion of the IEP team on remand. USDB has not cited, and this court has not found, a single case approving the wholesale remand by a district court to an IEP team of a properly exhausted request for compensatory services following a determination that a covered student had been denied a FAPE.

In analogous circumstances, however, two circuits have held that IDEA does not allow the kind of delegation at issue in this case. Both the Sixth and D.C. Circuits have held that IDEA does not allow an IEP team to assume the authority given a hearing officer. *Bd. of Educ. of Fayette Cty. v L.M.*, 478 F.3d 307, 317-18 (6th Cir. 2007) (noting the case "raises the fundamental issue of whether the details of a compensatory-education award can be remanded to the [IEP team] and still comply with the statutory scheme of the IDEA" and answering that question in the negative); *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 521, 526-27 (D.C. Cir. 2005) (concluding that a hearing officer's award of compensatory education that allowed the student's IEP team to "reduce or discontinue" the compensatory education as it saw fit was inconsistent with

IDEA's statutory scheme). In *Reid*, a hearing officer determined the school district denied a covered student a FAPE and ordered compensatory education services. 401 F.3d at 521. The hearing officer left it for the IEP team, however, to determine when to terminate the compensatory education services. *Id.* Likewise, in *L.M.*, the hearing officer determined the school district denied the student a FAPE and ordered 125 hours of compensatory education services. 478 F.3d at 312. At the school's request, an appeal board altered the remedy. *Id.* Instead of requiring a certain number of hours of compensatory education, the appeals board ordered the student's IEP team to determine the type and duration of compensatory services the student was to receive. *Id.*

The courts in *Reid* and *L.M.* held that because IDEA prohibits due process hearings from being conducted by an employee of the agency involved in the education or care of the child, "the hearing officer may not delegate his authority to a group that includes an individual specifically barred from performing the hearing officer's functions." *Reid*, 401 F.3d at 526; *L.M.*, 478 F.3d at 317; *see also* 20 U.S.C. § 1415(f)(3)(A) (setting out limits on who can serve as a hearing officer). In so ruling, *L.M.* noted that when a student is still enrolled in the school that caused the violation, the majority of members of the student's IEP team are employees of that school district. This gives the school district undue influence on the delegated decision. 478 F.3d at 318. The analysis set out in *Reid* and *L.M.* is compelling and this court hereby adopts it as our own.

M.S. is still enrolled at USDB and, thus, the vast majority of M.S.'s IEP team are employees of USDB. As recognized by *L.M.*, this would give USDB undue influence over the decision of whether M.S. is to remain at USDB or be privately placed at Perkins at USDB's expense. This is a particularly meaningful conflict of interest given that M.S.'s IEP team continued to insist through the proceedings in the district court that the appropriate placement for M.S. was in the Provo School District. After all, "[c]ompensatory education involves discretionary, prospective, injunctive relief crafted *by a court* to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003) (emphasis added). Allowing the educational agency that failed or refused to provide the covered student with a FAPE to determine the remedy for that violation is simply at odds with the review scheme set out at § 1415(i)(2)(C). Furthermore, as noted by J.S., such an approach could trap M.S. in an endless cycle of costly and time-consuming litigation. That is, by remanding the placement issue to the IEP team, J.S. will have no recourse but to seek another due process hearing, and potentially file another federal lawsuit should the IEP team refuse to place M.S. at Perkins.

This court thus concludes that the district court did, indeed, delegate the issue of M.S.'s placement to M.S.'s IEP team. We further conclude that such delegation is at odds with the review scheme set out in 20 U.S.C. § 1415. *See*

*Murray ex rel. Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 928 (10th Cir. 1995) (holding this court reviews the district court's interpretation of IDEA de novo). Thus, we must remand this case to the district court to vacate its order and to resolve in the first instance whether M.S. should be placed at Perkins to compensate for USDB's failure to provide her with a FAPE.[7] In so ordering, this court recognizes that the passage of time and additional developments might bear significantly on the issue of M.S.'s placement. IDEA, however, allows for the presentation of additional evidence at the request of a party and empowers the district court to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(ii).

## B.  Attorneys' Fees

IDEA provides that a court may award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(I). Section 1415(i)(3)(B)(I) authorizes an award of fees for work performed in both administrative proceedings and court actions. *See Miller ex*

---

[7]This court denies J.S.'s request that this court decide the issue of M.S.'s placement. We recognize that on appeal from a district court order in an IDEA case, this court applies the same standard of review of a district court order as the district court applies to the order of a hearing officer. *Thompson R2-J Sch. Dist v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1149-50, 1150 n.6 (10th Cir. 2008). Nevertheless, the record provided by J.S. makes it impossible for this court to decide the placement issue in the first instance. In particular, no part of the administrative record developed during the due process hearing is part of the record on appeal. In the absence of a complete appellate record, it is impossible for this court to resolve the placement issue.

*rel. S.M. v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 565 F.3d 1232, 1247-49 (10th Cir. 2009); *see also T.D. v. LaGrange Sch. Dist.*, 349 F.3d 469, 479 (7th Cir. 2003); *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1027-28 (9th Cir. 2000). For purposes of § 1415(i)(3)(B)(I), "the parents prevail when actual relief on the merits of the child's claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Miller*, 565 F.3d at 1247 (quotations and alteration omitted). The determination whether the number of attorney hours are reasonably expended is reviewed for abuse of discretion. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). The district court's interpretation of IDEA and other legal conclusions are, however, reviewed de novo. *See id.*

All parties agreed, and the district court concluded, that J.S. is a prevailing party. Nevertheless, the district court concluded, inter alia, that J.S. is only entitled to a limited award of attorneys' fees because she only obtained limited success in both the administrative proceedings and the judicial action. *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) ("[W]here the plaintiff's claims arise out of a common core of facts, and involve related legal theories, the inquiry is more complex. In such a case, . . . 'the most critical factor is the degree of success obtained.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983))). In particular, the district court awarded J.S. just 30% of the fees incurred in association with the due process hearing and 40% of the

fees incurred in association with the federal court proceedings. These percentages roughly corresponded with the number of claims upon which J.S. prevailed during each of the relevant proceedings.[8]

Whether J.S. ultimately prevails on her claim that M.S. should be placed at Perkins is highly relevant to the question of the level of success she obtained. For instance, in urging this court to affirm the district court's limited award of fees, USDB argues J.S.'s real purpose in bringing this suit was to have M.S. placed at Perkins and that her failure to obtain that relief demonstrates the limited success she achieved. Because any analysis of the level of J.S.'s success must take account of the placement issue, the best course is to vacate the district court's fee award and remand the matter for further consideration after the district court resolves the issue of M.S.'s placement.

Although this court vacates the fee order and remands for further consideration, we nevertheless note that the district court's purely mechanical

---

[8]The district court concluded J.S. obtained a determination by the hearing officer that USDB committed two procedural violations of IDEA and a determination that the Provo School District was not an appropriate educational setting for M.S. The hearing officer ordered the provision of compensatory speech language pathology sessions. Thus, the district court concluded J.S. prevailed on three of the twelve issues presented to the hearing officer (i.e., 25%), but appears to have awarded 30% of the fees incurred in the due process hearings because J.S. "later prevailed on three noteworthy issues when [the district court] reviewed the hearing officer's conclusions."

The district court reviewed eleven issues it believed J.S. raised in her federal court complaint. It ruled in J.S.'s favor on four of those issues. The district court awarded J.S. 40% of the fees expended in the federal court proceedings.

analysis of an appropriate fee award, which appears to allow fees in proportion to the number of claims upon which J.S. prevailed, is at odds with governing precedent.[9] In cases where a plaintiff's claims for relief involve a common core of facts or are based on related legal theories:

> [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440.

J.S. advanced multiple theories to support her claim USDB denied M.S. a FAPE. Although the district court did not find merit to each of those theories, it

---

[9]Furthermore, as noted above there is some reason to think the district court's mechanical analysis: (1) understated the number of claims upon which J.S. prevailed in the federal court action by incorrectly accounting for the number of claims set out in her complaint and motion for judgment on the administrative record, *see supra* n.2; and (2) failed to account for her at least partial success on the question whether USDB had to utilize dual sensory strategies in M.S.'s IEP to deal with both her blindness and hearing loss, *see supra* n.4. Likewise, this court is not quite sure it sees the logic in the district court's assessment of the number of claims upon which J.S. prevailed at the due process hearing. Apparently treating the administrative proceedings as entirely distinct from the federal court action, the district court concluded J.S. prevailed on approximately three claims during the due process hearing and, thus, awarded J.S. 30% of her fees. The problem with this approach is that using the record J.S. built during the administrative proceedings, the district court concluded the hearing officer erred in significant respects and should have ruled in J.S.'s favor on several additional claims.

did conclude USDB denied M.S. a FAPE and must, in all future IEPs, account for M.S.'s dual sensory impairment. The district court awarded M.S. sixty weeks of "intensive" compensatory education services. Thus, even apart from the issue of M.S.'s potential placement at Perkins, J.S. obtained substantial and significant relief. *See id.* at 435 ("Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee."). Importantly, at no point in its fee order did the district court conclude that the claims upon which J.S. failed to obtain relief "were unrelated to the claims on which [s]he succeeded." *Id.* at 434. As *Hensley* makes clear, a case involving truly unrelated claims (i.e., "distinctly different claims for relief that are based on different facts and legal theories") "are unlikely to arise with great frequency." *Id.* at 434, 435. Although we leave the final resolution of the matter for the district court on remand, the IDEA claims at issue in this case do not appear to be "unrelated" as that term is defined in *Hensley*. *Cf. generally R. M-G. ex rel. A.R. v. Bd. of Educ.*, Nos. 15-2040, 2133, slip. op. at 8 (10th Cir. Apr. 13, 2016) (applying *Hensley* to conclude that all IDEA claims raised in that case were related) (unpublished disposition cited merely for its persuasive value).

On remand the district court must first resolve whether some of the claims raised in J.S.'s federal-court complaint were unrelated. *Hensley*, 461 U.S. at 434-35. If J.S. lost "on claims that were unrelated to the claims on which [s]he succeeded," then "no fee may be awarded for [counsel's] services on the

-21-

unsuccessful claim[s]."[10] *Id.* at 434, 435. If, on the other hand, the district court concludes all claims raised in J.S.'s suit are related, it must consider the significance of the overall relief obtained by J.S. in relation to the hours reasonably expended on the litigation. A purely mechanical, mathematical accounting of the discrete issues upon which J.S. prevailed is not an appropriate analysis of the overall-significance approach set out in *Hensley*. *Id.* at 436 (noting that although district courts have discretion to make equitable judgments in resolving fee requests, such discretion "must be exercised in light of the considerations" set out therein).

## IV. CONCLUSION

The district court's merits order and its order awarding limited attorneys' fees are both **VACATED** and the matters are **REMANDED** for further proceedings consistent with this opinion.

---

[10]Even then, however, the district court must undertake to weigh the allocation of attorney hours to those particular unrelated claims, rather than simply utilizing a percentage approach which assumes an equal number of hours of attorney work are attributable to every claim.